JOHN P. TOEPPER *et al.*, Plaintiffs-Appellants, v. BROOKWOOD COUNTRY CLUB ROAD ASSOCIATION *et al.*, Defendants-Appellees.

Second District   No. 2—89—1198

Opinion filed October 5, 1990.—Rehearing denied November 15, 1990.

William J. Wylie, of William J. Wylie & Associates, of Wheaton (Stephen A. Rehfeldt, of counsel), for appellants.

Howard C. Emmerman, of Rudnick & Wolfe, of Chicago, and Melbourne

A. Noel, Thomas W. Fawell, and Barbara J. Stuetzer, all of Katten, Muchin & Zavis, of Oakbrook Terrace, for appellee Chase Manhattan Bank.

Elizabeth Zott and Marjorie Press Lindblom, both of Kirkland & Ellis, of Chicago, for appellee NEI Corporation.

Gerard B. Gallagher, of Gallagher & Joslyn, of Oakbrook Terrace, for appellee Lawrence G. Malanfant.

John Huck, of McBride, Baker & Coles, and Katten, Muchin & Zavis, both of Chicago, and Rooks, Pitts & Poust, of Wheaton (John J. Mangan, of counsel), for other appellees.

JUSTICE DUNN delivered the opinion of the court:

Plaintiffs, John Toepper *et al.*, appeal from a judgment order entered by the circuit court of Du Page County granting various defendants' motions for judgment on the pleadings with regard to count I and count II of plaintiffs' class action complaint for injunctive and declaratory relief. Plaintiffs raise the following contentions on appeal: (1) that the trial court, in granting the motions, erroneously interpreted the declaration of covenants, conditions, restrictions and easements for Dominion Country Club Homeowners' Association (Declaration) regarding the use of Dominion Drive; (2) that the court erroneously determined that certain defendants were assignees of the original developer, NEI Corporation, and were therefore entitled to exercise the rights granted the developer in the Declaration; and (3) the trial court erred by failing to apply a provision of the Illinois Condominium Property Act concerning duration of certain developers' rights (Ill. Rev. Stat. 1989, ch. 30, par. 318.2(b)). We reverse and remand.

In their class action complaint, which was filed on November 4, 1985, plaintiffs alleged as follows. The Dominion Country Club Homeowners' Association (Dominion Association) was established pursuant to the Declaration, which was recorded on December 30, 1974. The complaint was filed on behalf of the condominium owners who were members of the Dominion Association, a class comprised of more than 135 members. A copy of the Declaration was attached as an exhibit to the complaint. The Declaration gave certain rights and obligations to the developer and defined the term "developer" as NEI Corporation of Illinois "and its successors and assigns." These rights included the right to develop portions of the planned development area and to add other real estate to the planned development area, which would sub-

ject any such real estate to the Declaration. The developer had the right to name the directors of the Dominion Association Board until the year 2026 unless 3,499 units were sold in the planned development area or the developer elected to terminate its sole control of the board.

Each condominium owner received an easement for ingress and egress over roadways in the Dominion Association area. Under section 3.03 of the Declaration, this easement was "for pedestrian and vehicular traffic for the benefit of all owners and not for the use or benefit of the public generally." The developer, its agents, employees, guests, and invitees also had the right to use such roadways until the developer's rights were terminated. Section 7.06 of the Declaration stated that its provisions could only be amended by an instrument executed by at least 75% of the unit owners.

Plaintiffs' complaint further alleged that on April 5, 1977, NEI executed a document purporting to assign all its right, title, and interest as developer under the Declaration to American National Bank & Trust Company of Chicago as trustee under trust agreement number 39296. A copy of this document was attached as an exhibit to the complaint.

According to the complaint, defendants, Federal Deposit Insurance Company (FDIC), Chase Manhattan Bank, and Lawrence Malanfant, executed a document titled "Developer Agreement" on September 30, 1979. Plaintiffs attached a copy of this agreement to the complaint. The recitals in this agreement stated that Chase held a mortgage from NEI and had foreclosed upon the mortgage. Although it is not completely clear from the complaint, the property in question was apparently the planned development area mentioned in the Declaration. Title to the land, according to the recitals, was owned by a land trust known as American National Bank, trust number 39296. By virtue of an order entered in the foreclosure proceeding, Chase, through a duly appointed agent, had the sole power of direction over the land trust.

The recitals further stated that Malanfant was the sole beneficiary of a land trust holding title to land adjacent to the Chase parcel. The FDIC held a mortgage on land which was apparently adjacent to the Chase parcel and was also a party to foreclosure proceedings concerning this land. According to the recitals, Chase and Malanfant had received written assignments from NEI of NEI's rights as developer under the Declaration. Chase, Malanfant, and the FDIC wished to share equally the developer's rights under the Declaration so that each could successfully develop its parcels.

The agreement stated that Chase, Malanfant, and the FDIC assign and cross-assign to one another any and all rights they may possess to act as developer under the Declaration. Each would have the power to name one director to the Dominion Association, and the fourth director would be chosen by unanimous consent of all three. The agreement also provided that they would generally instruct their director to vote in accordance with the desire of a majority of the parties. The parties also generally agreed that any actions based upon their rights as developers would be taken upon the affirmative desire of a majority of the parties. The parties further agreed to cause a certain agreement attached as an exhibit to the developer agreement to be executed.

In the attached agreement, the Dominion Association granted the FDIC, the aforementioned American National Bank land trust, and the La Salle National Bank land trust holding title to the Malanfant parcel, a perpetual easement for use of Dominion Drive. In return, the FDIC and La Salle were to pay $500 annually, while American was to pay $200 annually. The Dominion Association also agreed to lease a certain parking lot to the La Salle Bank land trust. This agreement was executed on October 1, 1979.

Plaintiffs' complaint also contained the following allegations. The agreement granting the aforementioned easements to use Dominion Drive was executed by defendants Robert Isarion and Richard Reiff, who were purporting to act as directors of the Dominion Association. Isarion and Reiff were appointed as directors of the Association by the FDIC, but the FDIC had no right to appoint individuals to Association directorships. Isarion and Reiff, therefore, did not have the authority to act as directors.

In conjunction with the developer agreement, NEI executed a document titled "Consent and Assignment," a copy of which was attached to the complaint. In this document, NEI consented to the developer agreement and, in order to confirm the rights of the parties to that agreement, assigned all of its right, title, and interest, if any, as developer under the Declaration to Chase, Malanfant, and the FDIC.

The complaint further alleged that defendants Jack Cerone and Sam Syracuse claimed that, under the developer agreement, they had the authority to act as Dominion Association directors. Cerone and Syracuse stated in a September 1985 letter to the Wood Dale city council that they were the only two directors of the Dominion Association, inferring that they had the authority to execute a document entitled "Agreement Respecting Private Roadway." Under this agree-

ment, American National Bank, as trustee under trust number 64551, would acquire all rights accruing to the developer under the Declaration, including the right to use Dominion Drive. According to the recitals of the agreement, this land trust was about to acquire title to the parcel which the FDIC obtained title to in the foreclosure proceeding and to which title subsequently passed to Capitol Bank & Trust of Chicago under trust number 553. The beneficiary of trust number 64551 was a joint venture between Marquette Properties, Inc., and the National Housing Partnership. Under the terms of the agreement, trust number 64551 was to widen Dominion Drive and install a gate preventing access to that road from Addison Road except by authorized card holders. Plaintiffs alleged, however, that Cerone and Syracuse did not have the authority to enter into this agreement on behalf of the Dominion Association because they were not directors.

The complaint further alleged that the joint venture applied to the Wood Dale Zoning Board of Appeals for a planned unit development (PUD) and the "Agreement Respecting Private Roadway" was submitted in conjunction with the application in order to satisfy a Wood Dale zoning ordinance requiring adequate access roads. In count I, plaintiffs sought injunctive relief to prevent Wood Dale from approving the proposed PUD, to prevent any party from utilizing any easement pursuant to the 1979 developer agreement, to prohibit the Dominion Association from granting any easements to parties who were not Association members without approval of the owners, and to prohibit Cerone and Syracuse from purporting to act as directors of the Dominion Association.

In count II of the complaint, plaintiffs sought a declaratory judgment stating, *inter alia*, that Isarion, Reiff, Cerone, and Syracuse never had the authority to act as Dominion Association directors, that the easements purportedly granted by the Association on October 1, 1979, are null and void, that the parties to the developer agreement did not receive the rights reserved to the developer under the Declaration, and that the rights of NEI as developer under the Declaration were personal rights which were not assignable absent the assignment of all the assets and liabilities of NEI to a successor developer. Counts III and IV, which are not at issue here, alleged breaches of fiduciary duty by Reiff, Isarion, Cerone, and Syracuse.

The trial court dismissed counts I and II in a 1986 order. Plaintiffs then appealed to this court, which reversed and remanded on the basis that certain necessary parties had not been made parties to the litigation. (*Toepper v. City of Wood Dale* (1987), 160 Ill. App. 3d 1163

(unpublished order under Supreme Court Rule 23).) Upon rehearing, this court modified its order by affirming the dismissal of defendant, City of Wood Dale, as a party defendant but reversing as to the other defendants.

Shortly after the case was remanded, the necessary parties were added, and the case was reassigned to a new trial judge. Defendants subsequently renewed their motions for judgment on the pleadings on counts I and II, and the motions were granted by the trial court in April 1989. Plaintiffs now appeal.

■■ A motion for judgment on the pleadings pursuant to section 2—615(e) of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615(e)) should only be granted if the trial court can determine the relative rights of the parties solely from the pleadings. (*Teeple v. Hunziker* (1983), 118 Ill. App. 3d 492, 497.) In ruling upon such a motion, the trial court must examine all pleadings, taking as true all well-pleaded facts set forth in the pleadings of the party opposing the motion and any reasonable inferences to be drawn from those pleadings to determine whether there are material issues of fact or whether the controversy may be resolved as a matter of law. (*Triangle Sign Co. v. Weber, Cohn & Riley* (1986), 149 Ill. App. 3d 839, 843.) If such an examination discloses the existence of issues of material fact, the motion for judgment on the pleadings must be denied. *Triangle Sign Co.*, 149 Ill. App. 3d at 843.

Relying on this court's decision in *Fairways of Country Lakes Townhouse Association v. Shenandoah Development Corp.* (1983), 113 Ill. App. 3d 932, plaintiffs argue that the developer's rights under the Declaration were personal rights of NEI which could not be passed on to another entity unless that entity acquired all of NEI's assets and liabilities. The *Fairways* case, however, is distinguishable from the instant case.

*Fairways* involved adjoining areas of land, the Fairway parcel and the Greens parcel, both of which were originally owned by the Richards Group. The two declarations for the Fairway parcel defined the term "developer" as the Richards Group of Illinois, Inc., "and its successors and assigns." The Fairway declarations gave the developer the right to annex additional property to the premises or common area from the proposed development area, which included the Greens parcel. *Fairways*, 113 Ill. App. 3d at 934.

The Richards Group transferred title to the Greens parcel to another entity which transferred it to defendants. Defendants then recorded a supplemental declaration purporting to annex the Greens parcel to the Fairway Declarations. The trial court ruled that the de-

veloper's right to annex land to the Fairway Declarations ran with the land to defendants and defendants were developers within the meaning of those declarations. 113 Ill. App. 3d at 935.

In reversing the trial court in *Fairways*, this court first concluded that the developer rights under the Fairway Declarations were personal rights which did not run with the land. (113 Ill. App. 3d at 935.) This court then stated as follows:

> "Defendants alternately contend that they, as 'successors and assign[s]' of the Richards Group, are the 'developers' as defined in the Fairway Declarations thus capable of exercising the annexation rights provided therein. We do not agree. Generally, the purchase of one corporation's property by another does not subject the purchasing corporation to the liabilities of the seller nor does it entitle it to exercise the seller's rights unrelated to the property. [Citations.] Such rights only accrue where there has been a consolidation or merger of the corporation or the purchasing corporation is merely a continuation of the seller. [Citation.] Such is not the case here. The record reflects that the defendants merely purchased title to the Greens property from Naper Venture, who purchased it from the Richards Group. *** Accordingly, the finding of the trial court that the defendants were developers within the meaning of the Fairway Declarations was error." 113 Ill. App. 3d at 936-37.

The term "successor" with regard to a corporation means another corporation which, through amalgamation, consolidation, or duly authorized legal succession, has acquired the rights and assumed the burdens of the initial corporation. (*Southern Patrician Associates v. International Fidelity Insurance Co.* (1989), 191 Ga. App. 106, 108, 381 S.E.2d 98, 99; *Hanna v. Florence Iron Co.* (1918), 222 N.Y. 290, 293-94, 118 N.E. 629, 631-32.) An assignment is a transfer of an identifiable property, right, or claim from the assignor to the assignee. (*In re Estate of Martinek* (1986), 140 Ill. App. 3d 621, 628.) It is apparent from a review of the *Fairways* decision that defendants did not argue that they had received an assignment of the Richards Group's developer's rights. In the portion of the opinion concerning whether defendants were "developers" as defined in the Fairway Declarations, this court did not consider whether the developer's rights had been assigned to defendants. Instead, this court pointed out that defendants had not merged or consolidated with the prior titleholders, nor were defendants a continuation of any of the previous titleholders. (*Fairways*, 113 Ill. App. 3d at 937.) This analysis clearly indicates that the court was only considering whether defend-

ants were successors of the original developer, and it was not faced with the argument that they were assignees.

■ In the case at bar, certain defendants argue that they received the developer's rights by assignment. No argument is raised that these defendants are successors of NEI. Accordingly, the *Fairways* case is inapposite. While, as we have seen, this court held in *Fairways* that the developer's rights were personal rights which did not run with the land (113 Ill. App. 3d at 936), this does not mean such rights cannot be assigned. Courts of other States have enforced assignments of developer's rights. See, *e.g., Shields v. Welshire Development Co.* (1958), 37 Del. Ch. 439, 446, 144 A.2d 759, 763 (assignment of developer's right to approve plans for buildings, fences, walk, and other structures); *East Sevier County Utility District v. Wachovia Bank & Trust Co.* (Tenn. 1983), 655 S.W.2d 924, 926 (assignment of developer's right to collect water and sewer line tap-on fees); *Chimney Hill Owners' Association, Inc. v. Antignani* (1978), 136 Vt. 446, 452-55, 392 A.2d 423, 427-28 (assignment of developer's right to collect assessments).

In the *Shields* case, the court concluded that the developer's plan-approval rights were assignable even though the deed restrictions establishing this right did not indicate whether the developer's rights thereunder could be assigned. (*Shields*, 37 Del. Ch. at 445-46, 144 A.2d at 762-63.) By contrast, in the case at bar, section 1.01 of the Declaration defines the term "developer" as "NEI Corporation *** and its successors and assigns." The rules governing construction of contracts are applicable to such a declaration. (See *Streams Club, Ltd. v. Thompson* (1989), 180 Ill. App. 3d 830, 838.) The interpretation and construction of such a declaration is therefore generally determined by the court as a matter of law. (*Streams Club*, 180 Ill. App. 3d at 838.) In light of the language of section 1.01 of the Declaration, we conclude the developer rights under that document were assignable.

■ We also disagree with plaintiffs' contention that under section 7.06 of the Declaration, the easements plaintiffs complained of permitting the grantees access to Dominion Drive could only have been granted with the approval of three-quarters of the Dominion Association members. Section 7.06 states that the Declaration may only be amended by an instrument executed by at least 75% of the Association members. Section 3.03 states that all members shall have an easement for ingress and egress across Dominion Drive, and "[t]his easement shall be for pedestrian and vehicular traffic for the benefit of all Owners and not for the use or benefit of the public generally."

The easement given in section 3.03 of the Declaration is not an exclusive easement. This point is further illustrated by the fact that the preamble of the Declaration states that the developer "may, from time to time, subject portions of the Planned Development Area to additional and separate covenants, restrictions, conditions, easements, charges, and liens for the benefit of all or part of the Planned Development Area and each owner of a dwelling unit thereon." Since the Association members' easement for ingress and egress on Dominion Drive is not exclusive, granting a similar easement to a nonmember does not constitute an amendment to the Declaration which would require the consent of three-quarters of the members.

Although we have rejected some of plaintiffs' contentions, we believe the complaint sets forth sufficient facts to establish the invalidity of the easements purportedly granted by the Dominion Association on October 1, 1979, assuming, as we must, the truth of those facts. According to the complaint, defendant Isarion, in his purported capacity as president of the Dominion Association, executed a document in which the Association agreed to grant perpetual easements for the use of Dominion Drive to the FDIC, American National Bank land trust number 39296 and the La Salle National Bank land trust holding title to the Malanfant parcel. The Association also agreed to lease a certain parking lot to the La Salle National Bank land trust.

Plaintiffs alleged in the complaint that Isarion and the other Association director at that time, Reiff, were appointed by the FDIC. Plaintiffs further alleged that the FDIC claimed the authority to exercise the developer's rights under the Declaration by virtue of the September 1979 developer agreement executed by the FDIC, Chase, and Malanfant. In that document, the three parties expressed a desire to share the developer's rights and purported to assign and cross-assign those rights to one another. Under the terms of the agreement, the FDIC received the right to appoint one Dominion Association director and veto power over the appointment of another.

Defendants suggest several reasons why, in their opinion, the purported assignments of developer rights in the developer agreement were valid. First of all, defendants point out, the original developer, NEI, executed a document consenting to the developer agreement and purporting to assign any of its developer's rights to the parties to that agreement. The problem with this argument is that plaintiffs allege in the complaint and NEI admits in its answer that NEI assigned its developer rights under the Declaration to American National land trust number 39296 in April 1977. A copy of this written assignment was attached to the complaint.

■ An assignment is a transfer of some identifiable property, right, or claim from the assignor to the assignee. (*In re Estate of Martinek* (1986), 140 Ill. App. 3d 621, 628.) An assignment operates to transfer to the assignee all of the assignor's right, title, and interest in whatever is assigned. (*Martinek*, 140 Ill. App. 3d at 629; *Bishop v. Village of Brookfield* (1981), 99 Ill. App. 3d 483, 490; *Litwin v. Timbercrest Estates, Inc.* (1976), 37 Ill. App. 3d 956, 958.) Thus, if NEI assigned its developer rights in 1977, as plaintiff alleges and NEI admits, it would have had no such rights to assign in 1979, rendering the "Consent and Assignment" that it executed in connection with the developer agreement meaningless.

Defendants also argue that according to the recitals of the developer agreement: (1) Chase and Malanfant had received written assignments of NEI's developer rights; and (2) an agent of Chase held the power of direction for American National trust number 39296. Defendants argue that the developer agreement was valid because Chase, Malanfant, or both had the developer rights at the time of the declaration.

Plaintiffs and defendants dispute whether plaintiffs are bound by the factual recitals in the developer agreement, an exhibit to their complaint. (Compare *McCormick v. McCormick* (1983), 118 Ill. App. 3d 455, 460-61, and *Laster v. Chicago Housing Authority* (1982), 104 Ill. App. 3d 540, 543.) It is not necessary to resolve this dispute because, even if Chase and/or Malanfant did possess developer rights before entering into the developer agreement, the FDIC could not have validly obtained developer rights by virtue of that agreement.

■ The three parties to the developer agreement purported to assign and cross-assign the developer's rights to one another. As we have seen, however, the effect of an assignment is that the assignor transfers all of its right, title and interest in the thing assigned to the assignee. (*Martinek*, 140 Ill. App. 3d at 629; *Bishop*, 99 Ill. App. 3d at 490; *Litwin*, 37 Ill. App. 3d at 958.) Since none of the parties to the developer agreement relinquished any developer rights to the others, the agreement cannot be characterized as an assignment even though the word is repeatedly used in the agreement. The issue of whether an assignment has taken place is dependent upon the intent of the parties. (See *Martinek*, 140 Ill. App. 3d at 629.) Since the intention of the parties to the developer agreement was to share and jointly exercise the developer rights, and no party intended to relinquish such rights, no assignment took place.

Defendants argue that plaintiffs have waived any argument that the complaint sets forth facts showing the purported assignments of

developer rights in the developer agreement was invalid because no such argument was raised in the trial court. We disagree. In oral arguments on the original motions for judgment on the pleadings and motion to reconsider entry of judgment on the pleadings in 1986, plaintiffs' attorney questioned the validity of the purported assignments. In their response to the renewed motions for judgment on the pleadings in 1989, plaintiffs incorporated all arguments previously made in response to the original motions. Plaintiffs therefore preserved this issue for review.

Section 1.01 of the Declaration defined developer as NEI Corporation "and its successors and assigns." Thus, the powers given to the developer under the Declaration could only be exercised by NEI or its successors and assigns. Even if Chase and/or Malanfant received valid assignments of developer rights, they could not agree to share those rights with an outside entity such as the FDIC. This includes the developer's right to name directors to the Dominion Association board.

■ Therefore, according to the facts alleged in the complaint, and considering the exhibits attached to the complaint, the FDIC did not possess the developer rights under the Declaration and had no authority to appoint directors to the Dominion Association. If, as the complaint alleges, Isarion and Reiff were appointed directors of the Association by the FDIC, they had no authority to act in said capacity. The agreement to convey easements executed by Isarion on behalf of the Association would be invalid. This is true even though, as defendants point out, numerous other parties including NEI and American National Bank land trust number 39296 consented to the easements in question. The easements in question were granted by the Dominion Association, not by NEI or trust number 39296. Therefore, if the person executing the agreement on behalf of the Association lacked the authority to do so, the easements were invalid. Plaintiffs pleaded sufficient facts to establish an entitlement to injunctive relief to prevent defendants from claiming any rights under those purported easements and to a declaratory judgment that these easements were invalid.

■ Plaintiffs also sought a declaratory judgment that Cerone and Syracuse never had the authority to act as Dominion Association directors and injunctive relief to prohibit them from purporting to act in that capacity. Plaintiffs alleged in the complaint that Cerone and Syracuse never had the authority to act as directors. While this may be a conclusional allegation, as defendants maintain, it finds support elsewhere in the complaint. As we have indicated, plaintiffs pleaded sufficient facts to establish that the parties to the developer agree-

ment set forth therein a system for choosing directors that contravened the Declaration. It is a reasonable inference that Cerone and Syracuse were appointed directors pursuant to this procedure. Therefore, plaintiffs' complaint contains sufficient support for this claim.

Plaintiffs have also argued that under section 18.2(b) of the Condominium Property Act (Act) (Ill. Rev. Stat. 1989, ch. 30, par. 318.2(b)) a developer may not reserve to itself the right to choose directors for a board of managers for a period of more than three years after the recording of the declaration. As defendants point out, however, section 2.1(a) of the Act (Ill. Rev. Stat. 1989, ch. 30, par. 302.1(a)) makes it clear that section 18.2 does not apply with respect to events occurring prior to July 1, 1984, and would not apply to invalidate vested rights from a declaration recorded in 1974, including the developer's rights under that document. Nevertheless, for the reasons we have stated, the trial court erred by granting defendants judgment on the pleadings on counts I and II.

Accordingly, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded.

Reversed and remanded.

REINHARD and GEIGER, JJ., concur.