RICHARD J. McCANN *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. R.W. DUNTEMAN COMPANY *et al.*, Defendants-Appellants and Cross-Appellees.

Second District   No. 2—92—0540

Opinion filed January 12, 1993.—Modified on denial of rehearing March 10, 1993.

James A. Reiman & Associates, Ltd., and Griffin & Fadden, Ltd., both of Chicago (James A. Reiman and Bradley B. Falkof, of counsel), for appellants.

Kalinich, McCluskey, Sullivan & Boylan, P.C., of Glen Ellyn (Paul T. Kalinich, of counsel), for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

On October 9, 1990, plaintiffs Richard McCann (Richard), Lynn J. McCann (Lynn) and McCann Construction Specialties, Inc. (McCann Construction), a company controlled by Richard, filed a complaint for injunction and other relief. Count I sought to enjoin defendant Crush Crete, Inc. (Crush Crete), from using the subject easement. Count II sought to enjoin R.W. Dunteman Company's (Dunteman's) use of the subject easement. Count III alleged that Du-Kane Asphalt Company (Du-Kane) has extended the use of the easement to accommodate persons, entities, and lands for which it was not created or intended, and sought to terminate said easement and permanently enjoin Du-Kane's use of same.

On December 18, 1990, defendants filed an answer and counterclaim. Count I of the counterclaim sought damages from plaintiffs for alleged obstruction of the easement. Count II sought damages for alleged tortious interference with their business. Count III sought damages for an alleged assault. Count IV sought to enjoin plaintiffs' alleged

interference with defendants' use of the easement. The parties agreed to bifurcate the injunction counts from the damage counts of their complaints.

Before describing the relevant evidence adduced in the bench trial on the injunction counts, we note the following. Below, a roughly drawn map of the real estate involved in this case indicates the approximate location of: (1) the easement in question; (2) parcels I through VI; and (3) the surrounding real estate and roads.

Exhibit A -- not drawn to scale.

Moreover, for purposes of clarity, a brief description of the parties and their interests in the various parcels of real estate is helpful. Plaintiffs Richard and Lynn McCann purchased parcel I as beneficiaries of an Illinois land trust. McCann Construction is a plaintiff; it is a construction supply company, located on parcel I and is controlled by Richard.

Defendant Du-Kane manufactures and sells hot asphalt and other paving materials from its plant located on parcel II. Defendant Dunteman builds roads, primarily for governmental entities, and it operates out of parcels III through VI. Defendant Crush Crete recycles broken asphalt and concrete; it owns no machinery and rents equipment from Du-Kane. Crush Crete operates primarily on parcels III and V. The principal officers and shareholders of Du-Kane, Dunteman, and Crush Crete are members of the Dunteman family.

Also, the following history of the parcels of real estate is essential to an understanding of the issues in this appeal. In 1965, Howard Selcke (Howard) purchased parcels I and II, which are located in Addison, Illinois, from Tony Ross. Parcel I is east of and adjacent to Route 53, and parcel II is a landlocked 5-acre tract of property contiguous on the east side of parcel I. Howard did not purchase or have any interest in parcels III, IV, V, or VI. Shortly thereafter, Howard conveyed parcel I to his brother, Eugene. The deed to Eugene created the easement involved in this case and contained the following language:

> "Howard J. Selcke, *et al.*, his heirs, assignees or transferees shall have a right of ingress over the piq being the South 33 feet of the p.i.q. along the south boundary thereof for a distance of 339.22 feet."

At that time, Howard used parcel II to store equipment and sewer pipes. Eugene operated a septic tank company out of parcel I and covered the easement with gravel.

Du-Kane purchased parcel II from Howard and his wife in 1970, thereby acquiring the benefit of the easement on parcel I. Upon acquiring parcel II, Du-Kane erected an asphalt manufacturing plant (plant) on the property. Except for seasonal shutdowns, Du-Kane has continuously operated the plant since 1970, at which time it replaced the gravel covering the easement with an asphalt-paved road built to State standards.

During the construction season, several hundred 20-ton semi-trailer dump trucks traverse the easement each day to transport raw materials to parcel II for the manufacture of asphalt and to carry out asphalt manufactured by the plant.

In 1975, Richard and Lynn as beneficiaries of an Illinois land trust purchased parcel I. Prior to buying parcel I, Richard had operated McCann Construction for six years out of an unspecified facility located somewhere near parcels I through VI. Also, prior to the purchase of parcel I, Richard knew that Du-Kane operated an asphalt manufacturing and sales facility on parcel II and that Du-Kane and its customers and suppliers used the easement for access to said parcel.

McCann Construction built a structure containing its office/showroom/warehouse on the south part of parcel I, approximately one-car length north of the easement. Additionally, it located a portion of its customer and employee parking spaces immediately adjacent to and along the north line of the easement. McCann Construction's offices are situated on the south side of the building, with office windows overlooking the easement on parcel I.

Prior to 1985, Dunteman's headquarters were located in Bensenville. Dunteman purchased parcels III, IV, V and VI in 1985 from Franzen-Peters. These parcels are contiguous to each other, and parcel III is located adjacent to and directly east of parcel II. Early in 1980, Franzen-Peters bought parcels III through VI and operated an asphalt plant on them. Franzen-Peters used Lombard Road, a north-south thoroughfare, as an alternate route between those four parcels and North Avenue. It did not use the subject easement. In the mid-1980's, for a reason not found in the record, Lombard Road was closed to traffic between parcels III through VI and North Avenue. Franzen-Peters constructed an office building on parcel IV which currently houses the office staffs of all, namely, Dunteman, Du-Kane and Crush Crete.

In or about 1987, Crush Crete, which markets and produces recycled asphalt and concrete, began operations out of parcels II, III, IV, V and VI. Crush Crete, by verbal agreement with Dunteman, is allowed to stockpile used asphalt and concrete on parcels III and V. Broken-up pavement is trucked in by Dunteman and other road-building concerns and stockpiled on parcels III and V. Using processing equipment leased from Du-Kane, Crush Crete grinds down the used materials into a form which can be used in the manufacture of asphalt. Approximately 30% of the processing actively takes place on parcel II, with the remaining 70% occurring on parcel III. All processed materials are sold to Du-Kane, which stores same on parcel II. Prior to this lawsuit, trucks carrying broken-up pavement to parcels III and V frequently used the subject easement across parcel I.

## TRAFFIC UPON THE EASEMENT

The testimony of the parties diverged significantly regarding the issue of truck traffic upon the easement across parcel I.

Richard testified as to his analysis of defendants' exhibit No. 11, which tallied the average number of daily round trips over the easement to the asphalt plant on parcels III and V from 1975 through 1990. From 1975 to 1984, a daily average of 228 round trips were made over the easement. For the 1985 to 1990 period, which followed Dunteman's purchase of parcels III through VI, the average number of daily round trips over the easement increased to 464, a 60% rise in traffic.

Richard further testified that the increase in traffic over the easement, plus the trucks' higher rates of speed, raised dust which entered his warehouse and offices on parcel I through the heating, ventilating and air-conditioning systems. Dust was also deposited on parked cars and the McCann Construction building located on the south part of parcel I, causing the need for extensive clean-up efforts.

Ray Jackson testified that he was a McCann Construction employee, who was directed by Richard to make a count of the trucks traveling over the easement for a three-hour period on two days, namely, September 27, 1990, and October 5, 1990. During each three-hour period, Jackson observed truck traffic which far exceeded the traffic reported in defendants' records for said two days.

Paul Dunteman (Paul), president of Du-Kane and secretary of Dunteman, testified that the traffic had not increased on the easement since the McCanns bought parcel I in 1975. Since 1970, the Du-Kane plant has been licensed for a maximum production of 480 tons of asphalt per hour. The size of the trucks used to haul raw materials to the plant and finished asphalt carried therefrom has remained the same since 1975. If the plant is running at maximum capacity, in-and-out truck traffic over the easement could reach a rate of 960 round trips per day.

Paul further stated that the use of "round robins" actually decreased the traffic over the easement since Du-Kane started using recycled materials. A round robin occurs when a truck comes to the plant with a load of broken asphalt or concrete, dumps that material on the stockpile located on parcels III and V and then takes a load of freshly made asphalt from the Du-Kane plant located on parcel II. The number of round robins has been increasing since 1985. At the time of trial in October 1991, the number of round robins had increased to 30% of the total trips into and out of parcel II.

Paul admitted that there was an alternate easement for parcels III through VI. At the time of trial, he did not know who owned this alternate easement. Dunteman trucks regularly use this easement as a means of ingress and egress to parcels III to VI. Dunteman posted a sign advertising its business where this easement intersects with Route 53. We reiterate that nothing in the record clearly describes or shows the location of this so-called alternate easement. The map set forth above only estimates the position of the alternate easement.

## CONDITION OF THE EASEMENT

As noted above, Du-Kane paved the easement in 1970. Richard testified that the road had deteriorated significantly by the mid-1980's. In 1986, due to poor drainage along the easement he had a catch basin and a new manhole built. In 1987, Richard had a curb installed approximately four to five feet south of the easement's pavement. Crushed limestone provided by Du-Kane was put over the unpaved area of the easement between the road and the south edge of parcel I.

Paul testified that plaintiffs' installation of the curb in 1987 caused substantial deterioration of the easement's pavement. After the curb was installed, a trench existed between the curb and the pavement. At plaintiffs' request, Du-Kane supplied the limestone to fill in that area. Du-Kane offered to patch that area with asphalt. It was Paul's understanding that plaintiffs would pave this area, but they never did. Plaintiffs further modified the easement by installing a concrete parking apron on its north edge. Paul asserted that this construction partially blocked the normal flow of water from west to east, causing the easement to flood on the west end near Route 53 during rainstorms.

In 1990, Richard had two reinforced concrete barrier bumps built across the easement to slow truck traffic on the road. Richard admitted that the easternmost bump was higher than intended, but he denied it was overbuilt.

Paul testified that the barriers were 8 to 10 inches high with near vertical drops. Paul stated that the barriers were built twice as high as they should have been and that, when trucks come down off the barriers, they "beat the pavement apart." In June 1990, defendants put asphalt along the barriers' edges to minimize their impact upon the trucks. Plaintiffs removed this asphalt, leaving the barriers' sharp edges. Then, for 2½ days, on seven or eight occasions, defendants installed asphalt along the barriers' edge, and plaintiffs removed the asphalt.

Richard testified that on August 28, 1990, at his direction, the asphalt along the barrier's edge was removed with the intent of grinding down the speed bumps. Defendants' front-end loader then approached the bumps with a load of asphalt. Richard drove into a pile of asphalt on the easement and told the machine operator to remove the asphalt. He locked the gate between parcels I and II for 45 minutes.

Paul contended that the rapid deterioration of the road on the easement was due to three factors: (1) plaintiffs' construction of the curb and the failure to pave the area between the curb and road; (2) plaintiffs' construction of the concrete parking apron on the northern side of the road; and.(3) plaintiffs' installation of the barriers on the easement.

The parties agreed that the road had deteriorated to the point where it had to be rebuilt completely.

At the conclusion of the bench trial on the injunction counts, the following order was entered:

"1. McCann's prayer for the termination of the Easement across the Parcel I is denied.

2. McCann's prayer for injunctive relief is granted in part and denied in part; specifically,

A. R.W. Dunteman Company, an Illinois Corporation, Crush Crete, Inc., an Illinois corporation and their subsidiaries, employees, customers and invitees are permanently enjoined and restrained from utilizing the South 33 feet of Parcel I for ingress and egress from Route 53 and from Parcels III, IV, V and VI depicted in Exhibit I, attached hereto; and

B. Du-Kane shall cause its employees, agents and invitees to restrict their use as follows—

no person who ingresses onto the Parcel II by any avenue other than Easement shall egress from the Parcel II via the Easement.

3. McCann shall cause its employees, agents and invitees not to interfere with Du-Kane's use or maintenance of the Easement.

4. Du-Kane shall cause the road upon the Easement to be repaired, and thereafter shall cause the road upon the easement to be maintained.˙ 95% of the cost of the road repair and future maintenance shall be paid by Du-Kane, and 5% of such costs shall be paid by McCann; except that 100% of the cost of removing the speed bumps and curb from the Easement shall be paid by McCann.

5. McCann shall reimburse Du-Kane for its share of the costs of repairing the road upon the Easement, as set forth in paragraph [4] hereof, within thirty (30) days of Du-Kane's submission of an invoice.

6. Not more than semi-annually, Du-Kane shall submit to McCann an invoice for McCann's share of the costs of maintaining the road upon the Easement (as set forth in paragraph [4] hereof), and McCann shall pay the amount of such invoice within thirty (30) days of receipt."

After entry of the foregoing order, the trial court made an express written finding pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) that there was no reason to delay the appeal because of the other issues in the cause.

On appeal, defendants raise four issues, namely: (1) whether the trial court erred in granting injunctive relief to plaintiffs; (2) whether the use of an easement which reduces the burden on the servient estate and which is consistent with the historical development of the dominant estate can be enjoined; (3) whether the court below erred in holding that the burden on the servient estate is irrelevant when determining whether to enjoin use of an easement to access realty adjacent to the dominant estate; and (4) whether the trial court erred in finding that defendants bear 95% of the cost of repaving the subject easement. On cross-appeal, plaintiffs contend that the trial court erred in denying their request to terminate the subject easement.

Initially, we note that at oral argument before this court the parties stipulated that there presently are negotiations with Addison to reopen that part of Lombard Street which has been closed since the mid-1980's.

We first address defendants' argument that the court below erred in enjoining their use of the easement to access parcels III through VI.

■ The easement created by the subject deed is an easement appurtenant. An easement is a right or privilege in real estate of another, and, when exercised in connection with the occupancy of other land, it is said to be appurtenant thereto. The tract of land benefitted by the easement is the dominant tenement or estate, and the land burdened with the easement is the servient tenement or estate. (*Koplin v. Hinsdale Hospital* (1990), 207 Ill. App. 3d 219, 230-31.) Here, parcel II owned by Du-Kane is the dominant estate, and the McCanns' parcel I is the servient estate. As the owner of the dominant estate, Du-Kane is entitled to necessary use of the easement. "Necessary use" has been defined as such use as is reasonably necessary for full

enjoyment of the premises. (*Flower v. Valentine* (1985), 135 Ill. App. 3d 1034, 1039.) The owner of the dominant estate has the right and duty to maintain the easement; however, he cannot, for the sake of his convenience, materially alter the easement so as to place a greater burden on the servient estate or interfere with the use and enjoyment of the servient estate by its owner. (*Flower*, 135 Ill. App. 3d at 1039-40; *Beggs v. Ragsdale* (1983), 120 Ill. App. 3d 333, 337.) In the absence of restrictions, an easement appurtenant may be used for the general benefit of the dominant estate; any attempt to use an appurtenant easement for the benefit of nondominant land may be enjoined. (*Koplin v. Hinsdale Hospital*, 207 Ill. App. 3d at 231.) An easement appurtenant may not be extended by the dominant estate's owner to accommodate other lands which he may own and for which the easement was not originally intended. *Beloit Foundry Co. v. Ryan* (1963), 28 Ill. 2d 379, 388.

Defendants argue that the owner of the dominant estate may use an unrestricted easement in any reasonable manner which is necessary for the owner to fully enjoy the premises. (*Diller v. St. Louis, Springfield & Peoria R.R.* (1922), 304 Ill. 373.) Defendants concede that a new use of the easement must be reasonably necessary and, to the extent it is different from the use originally intended, such a different use may not unreasonably increase the burden on the servient estate. Defendants maintain that the necessary use of the easement means that they may use it to achieve the maximum operating capacity of the Du-Kane asphalt plant. Defendants maintain that a conservative application of this rule would allow Du-Kane to run as many trucks across the easement as is necessary for Du-Kane to operate the plant at maximum capacity, namely, 960 trips per day or 80 trips per hour. Further, citing *Wetmore v. Ladies of Loretto, Wheaton* (1966), 73 Ill. App. 2d 454, defendants contend that even if there is a misuse of the easement its impact is minimal.

Plaintiffs counter that the instrument creating the easement was clear in its intent to provide ingress and egress to Route 53 for parcel II only. They contend that increased use of the easement is not related to the normal development of the dominant estate but instead is for the development of adjoining parcels, primarily, III and V. Moreover, plaintiffs maintain that defendants' reliance on *Wetmore* is misplaced because the easement's use is not at all minimal.

The critical testimony regarding this issue deals with the trucks going over the easement to parcels III and V, carrying in broken asphalt and concrete and carrying out finished asphalt. Paul admitted that the Dunteman trucks and those of other contractors used the

easement when taking loads of asphalt and concrete chunks to the stockpile on parcels III and V.

Paul testified that there has been no increase in truck traffic over the easement since 1975. He relied in part on defendants' exhibit No. 11, consisting of asphalt sales for the period of 1975-84. He acknowledged, however, that the relevant records show a substantial increase in the easement's traffic for the period 1985-90 (after parcels III through VI were purchased). He also conceded that defendants' exhibit No. 11 does not include all Dunteman truck traffic into and out of parcel II. Paul further admitted that defendant's exhibit No. 11 might not be accurate.

Relying on Dunteman's records, Richard testified that from 1975 to 1984 there were on average 282 daily trips over the easement. After Dunteman acquired parcels III through VI, there was an increase to 464 daily trips over the easement in the 1985 to 1990 period. The testimony of Ray Jackson, who observed traffic over the easement on two separate days, tends to support Richard's contentions.

This evidence serves to undercut defendants' assertion that, if there is a misuse of the easement, it is minimal. It is reasonable to infer that since the operation of Crush Crete on parcels III and V began in 1987, the amount of traffic traveling the easement for these parcels' development has increased substantially. Therefore, *Wetmore* does not support defendants' position.

■ This evidence also demonstrates that the increased traffic over the easement on parcel I is not necessary for normal development of parcel II, upon which Du-Kane mixes raw materials and furnishes finished asphalt to waiting vehicles. The increased traffic appears directly to benefit parcels III and V, which Dunteman owns and upon which Crush Crete performs most of its operations. This activity of hauling increased loads of recyclable materials over the easement does not enhance the normal development of parcel II. Du-Kane has a fixed capacity for delivering loads of finished asphalt. The plant can make no more than 480 tons of asphalt per hour. In other words, parcel II has reached the limits of its normal development. Thus, the excess traffic carrying recyclable materials to parcels III and V is not necessary for parcel II's normal or historical development. Denying ingress and egress over the easement to trucks going into and out of parcels III and V would have no impact upon parcel II's development. Accordingly, we find that the trial court did not err in prohibiting the easement's use for said purposes.

■ Next, defendants argue that the enforcement of the injunction will result in a financial calamity for them. Allan Dunteman (Al-

lan), president of Dunteman, testified at trial that if direct access over the easement to stockpiles of recyclable asphalt and concrete on parcels III and V is barred, trucking time will increase 10 to 12 minutes per load. He further testified that it costs $1.20 per minute to operate a 20-ton dump truck; thus, the cost of trucking each load would increase $12 to $14.40 if use of the easement to access parcels III and V is eliminated. Allan also indicated that various safety problems would arise if defendants were forced to enter and exit parcels III and V using the alternate easement.

Paul's affidavit filed in support of Du-Kane's motion to stay injunction order and motion to reconsider order dated April 20, 1992, stated that if round robins were eliminated, Du-Kane would have to grant its customers price concessions to remain competitive. He further testified that for Dunteman alone such price concessions would exceed $135,000 each construction season.

The trial court did not specifically address this issue. Reviewing the evidence, we find it speculative, at best, and, as such, not sufficiently based on fact to merit a reversal of the trial court's order. Moreover, in 1987, defendants began significant use of parcels III and V for stockpiles of materials to be processed by Crush Crete. At that time, they were aware that Lombard Street had been closed to traffic. Defendants were also aware that they did not know over whose property the alternate easement went. Thus, defendants knew or should have known that their access to parcels III through VI was subject to limitation. Instead of determining their ability to access these parcels, defendants pushed ahead with their recycling efforts on the asphalt. It would appear that defendants are responsible for the precarious position in which they now find themselves.

■ Defendants' next argument is that plaintiffs have unclean hands and, thus, are barred from obtaining relief in equity. Defendants point to evidence adduced at trial that Richard intentionally and maliciously pursued a course of conduct designed to intimidate and harass Du-Kane in particular. The evidence concerning the squabbles between the parties is contradictory. Richard's explanations for what transpired in the various confrontations are every bit as convincing as defendants' testimony. The evidence does not support a finding that the doctrine of unclean hands is applicable here.

■ Finally, defendants argue that the easement's pavement deteriorated due to plaintiffs' unilateral actions and, therefore, the court below erred in requiring Du-Kane to bear 95% of the rebuilding cost. The testimony regarding this issue is also contradictory. At the time of trial, 20 years had passed since the easement's paving. Richard tes-

tified that the pavement was substantially degraded by the mid-1980's, before he had installed the curb, manhole and catch basin. Defendants put forward no records which demonstrated that the road had been regularly maintained. This balanced defendants' assertions that plaintiffs' installation of the curb in 1987 and the speed bump barriers in 1990 caused the road's deterioration. As the parties agree that the road must be rebuilt and that it is used almost exclusively by traffic entering and exiting parcel II, the trial court's determination that defendants should pay 95% of the costs is not in error.

■ On cross-appeal, plaintiffs argue that defendants' misuse of the easement should result in its termination. Defendants maintain that there is no Illinois authority for terminating an easement; thus, they conclude that the remedy of termination is not available. While not exactly on point, *URS Corp. v. Ash* (1981), 101 Ill. App. 3d 229, provides this court with some guidance as to this issue. There, the court found that an easement granted for a particular purpose ceases to exist if abandoned or rendered impossible of accomplishment. The *Ash* court concluded that the forfeiture of easements is not favored, as an easement can only be extinguished in some mode recognized by law. (*Ash*, 101 Ill. App. 3d at 236.) We find that the forfeiture of the subject easement would be thoroughly inappropriate. The trial court's order eliminated the traffic travelling over the easement to parcels III through VI. Only those trucks going directly to and from parcel II will traverse the easement, which is thoroughly in keeping with the easement's purpose.

For reasons stated above, we affirm the judgment order of the circuit court set forth herein.

Affirmed.

UNVERZAGT and McLAREN, JJ., concur.