# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Hahn v. County of Kane*, 2012 IL App (2d) 110060

---

| | |
|---|---|
| Appellate Court Caption | MARJORIE C. HAHN, Successor Trustee to Robert C. Hahn, Trustee Under Trust Agreement Dated November 13, 1998, Plaintiff and Counterdefendant-Appellant and Cross-Appellee, v. THE COUNTY OF KANE and THE CITY OF ST. CHARLES, Defendants-Appellees (Internal Combustion, LLC, Defendant and Counterplaintiff-Appellee and Cross-Appellant). |
| District & No. | Second District<br>Docket No. 2-11-0060 |
| Filed | January 18, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where plaintiff granted defendant county a drainage easement on property plaintiff owned near an intersection that was in the process of being improved and then another defendant purchased an adjacent parcel owned by plaintiff at the intersection and began using the servient property for drainage from its parcel, the trial court erred in entering judgment for defendants based on the finding that the county assigned a right to use the easement to the purchaser of the parcel, since the county was not entitled to assign to another party a right to join in the use of the easement and the county's action went beyond both the civil rule providing that the owner of higher ground may allow surface water to follow its natural course and may construct artificial devices to make the flow more efficient and the good husbandry exception providing that the flow of surface water may be increased if required for proper husbandry; however, the cause was remanded for consideration of the affirmative defenses raised by defendants. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 10-MR-277; the Hon. Thomas E. Mueller, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | Joseph P. Sauber, of Shearer & Agrella, of St. Charles, for appellant. |
| | Jeffrey S. Torosian and Kimberly M. DeShano, both of Greenberg Traurig, LLP, of Chicago, for appellee Internal Combustion, LLC. |
| | Phillip A. Luetkehans and Robert W. Funk, both of Schirott, Luetkehans & Garner, P.C., of Itasca, for appellee City of St. Charles. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Justices Burke and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiff, Marjorie C. Hahn, successor trustee to Robert C. Hahn, trustee under a trust agreement dated November 13, 1998, appeals from the trial court's orders denying the Robert C. Hahn Trust's (Hahn) request for an injunction and denying its motion to dismiss the counterclaim of defendant Internal Combustion, LLC (IC). In its cross-appeal, IC appeals from the trial court's order entering judgment in favor of Hahn on IC's counterclaim. We affirm in part, reverse in part, and remand.

¶ 2                                I. BACKGROUND

¶ 3     In 1998, Robert C. Hahn deeded to the Robert C. Hahn Trust property on the west side of Randall Road, north of Route 64, and within the municipal limits of defendant the City of St. Charles (the City). This property was approximately 1,200 feet long and 360 feet wide. The property was also adjacent to part of a planned improvement of the intersection of Randall Road and Route 64 by defendant the County of Kane (the County), which had exclusive jurisdiction over Randall Road. In 2005, Hahn and the County entered into a sales agreement. In exchange for approximately $3.6 million, Hahn conveyed to the County: (1) a strip of land in fee simple for purposes of widening and improving Randall Road; (2) an exclusive and permanent easement on approximately 3.2 acres of property at the north end of the Hahn property for "storm water drainage, retention, detention and conveyance, and all things appurtenant thereto"; and (3) temporary easements for building, demolition, and

-2-

grading purposes on other parts of the Hahn property. The permanent easement extended to the "respective heirs, successors and assigns" of Hahn and the County. In addition, the agreement provided that, under certain circumstances, Hahn could relocate the permanent easement to other property.

¶ 4    In November 2005, Hahn entered into a sales agreement to sell approximately eight acres of land at the northwest corner of Randall Road and Route 64 to Resnick Acquisition Corp., which planned to open an auto dealership. This parcel was directly south of the Hahn property. The use of the property as a dealership by defendant IC required the issuance of a special use permit by the City; IC applied for such a permit, with Hahn signing as record owner. An ordinance granting the special use was passed in April 2006. However, various other issues, including stormwater detention, prevented the closure of the deal as originally contemplated. Hahn agreed to extend the due diligence period of the sales agreement.

¶ 5    In November 2006, the City and the County entered into an intergovernmental agreement (IGA) regarding improvements to Randall Road north of Route 64. Among other things, the IGA required the County to expand the existing stormwater management facility located on the portion of the Hahn property that was encumbered by the permanent easement, which "currently service[d] the needs of the Randall Road Project." The facility, which had a capacity of 11 acre-feet, was to be expanded to 16.6 acre-feet. The County agreed to "permit the CITY or their agents, subject to the conditions of the existing easement therefor, to construct the incremental additional capacity up to 5.6 [acre-feet] in the future." The construction of additional capacity was to take place "if adjacent development desires to manage stormwater with a facility at the location of the afore described stormwater management facility." The County reserved 1.6 acre-feet of the expansion "for the future expansion of Randall Road" as contained in its transportation plan and stormwater ordinance; "adjacent development" was to be allowed to utilize up to 4 acre-feet of the expansion.

¶ 6    The sale of the property to IC closed in December 2006, but the next several years were spent on planning and financing. On May 19, 2010, the County issued permits for expansion and use of the stormwater management facility; two days later, the City issued a building permit for the entire IC project, and work on the project began. On June 1, 2010, Hahn filed a complaint for declaratory judgment and other relief and a petition for a temporary restraining order (TRO) and a preliminary injunction, seeking to enjoin IC from constructing the stormwater management facility.[1] The trial court denied the request for a TRO, and IC filed an answer, affirmative defenses, and a counterclaim against Hahn; in the counterclaim, IC alleged breach of the sales agreement. Hahn subsequently filed a three-count amended complaint seeking injunctive relief and the prevention of the use of the property for retention and detention of stormwater from the IC property.

¶ 7    After a December 2010 bench trial, the trial court found in favor of IC, the City, and the

---

[1]IC continued the excavation, grading, and drainage work required to expand the stormwater detention facility. Eventually, IC completed the expansion, moving five acre-feet of dirt from the encumbered Hahn property and laying two pipes from its property onto the easement; one pipe extended 100 to 150 feet onto the property, while the other ran 50 to 60 feet onto the land.

County on all three counts of Hahn's amended complaint. The court found that there was no language in the easement "which places any restrictions on the county use of the subject land in regards to the capacity or size of the stormwater detention facility to be constructed." There was also no evidence of any intent that the easement "would only be used by the County for its Randall Road stormwater needs." Therefore, Hahn's argument that "the owner of the dominant easement may not materially alter the easement so as to place a greater burden on the subservient estate is clearly not applicable herein." The trial court found that the easement was "available not only to Kane County, as grantee, but also to the county's heirs, successors and assigns." As there were "no capacity limitations applicable to the county's assigns, *** there was no reason for [IC] to seek [Hahn's] approval of its use of the detention facility."

¶ 8        The court also found that "the natural flow of rainwater on the subject property" ran from south to north (IC property to Hahn property) and that the law provides that the owner of the higher estate "has the right to allow surface water to follow the natural course of drainage onto the lower estate" and may even construct "artificial devices such as ditches or drains" to more efficiently carry off surface water. While noting that Hahn, through its attorney, was aware as early as 2007 of IC's desire to use the easement and did not express any opposition until 2010, the court did "not make any initial finding that [Hahn] had any rights which were waived or forfeited by *laches*." The court also denied IC's counterclaim, finding "no evidence of damages at this time." Both Hahn and IC now appeal.

¶ 9                                    II. APPEAL

¶ 10       An easement provides a privilege or a right in the use of another's property. *Board of Managers of Hidden Lake Townhome Owners Ass'n v. Green Trails Improvement Ass'n*, 404 Ill. App. 3d 184, 190 (2010). An easement appurtenant is defined as "an incorporeal right, short of actual ownership, over the land of another." *McGoey v. Brace*, 395 Ill. App. 3d 847, 848 n.1 (2009). The tract of land that is benefitted by the easement is known as the dominant estate (or the easement owner), while the land burdened by the easement is known as the servient estate. *McGoey*, 395 Ill. App. 3d at 848 n.1. An easement provides use rights; it does not provide ownership rights or an ownership interest in the land. *Matanky Realty Group, Inc. v. Katris*, 367 Ill. App. 3d 839, 842 (2006). The easement owner is entitled to the necessary use of the easement. *Matanky Realty Group, Inc.*, 367 Ill. App. 3d at 842. "Necessary use" is defined as use that is reasonably necessary for full enjoyment of the premises. *McCann v. R.W. Dunteman Co.*, 242 Ill. App. 3d 246, 254-55 (1993). The owner of an easement cannot make a material alteration to the character of the easement if the alteration would place a greater burden on the servient estate or would interfere with the use and enjoyment of the servient estate. *Professional Executive Center v. La Salle National Bank*, 211 Ill. App. 3d 368, 380-81 (1991).

¶ 11       An easement appurtenant runs with the land and may be transferred. *Kankakee County Board of Review v. Property Tax Appeal Board*, 226 Ill. 2d 36, 48 (2007). It passes by conveyance of the land to which it is annexed. *Beloit Foundry Co. v. Ryan*, 28 Ill. 2d 379, 388 (1963). No one but an owner of land can create an easement over it. *Waller v.*

*Hildebrecht*, 295 Ill. 116, 120 (1920); *Heritage Standard Bank & Trust Co. v. Trustees of Schools of Township No. 37 North, Range 12, East of the Third Principal Meridian in Cook County*, 84 Ill. App. 3d 653, 657 (1980). An easement appurtenant may not be extended by the owner of the dominant estate to accommodate other lands for which the easement was not originally intended. *Beloit Foundry Co.*, 28 Ill. 2d at 388; *McCann*, 242 Ill. App. 3d at 255. Any attempt to use an appurtenant easement for the benefit of nondominant land may be enjoined. *McCann*, 242 Ill. App. 3d at 255.

¶ 12     The interpretation of an easement is a question of law, subject to *de novo* review. *Board of Managers of Hidden Lake Townhome Owners Ass'n*, 404 Ill. App. 3d at 190. In general, an instrument creating an easement is construed in accordance with the parties' intention, which is ascertained from the words of the instrument and the circumstances contemporaneous to the transaction, including the state of the thing conveyed and the objective to be obtained. *River's Edge Homeowners' Ass'n v. City of Naperville*, 353 Ill. App. 3d 874, 878 (2004). However, where the language of an agreement is facially unambiguous, the trial court interprets the contract as a matter of law, without the use of extrinsic evidence. *River's Edge Homeowners' Ass'n*, 353 Ill. App. 3d at 878.

¶ 13     Here, Hahn sold the County a strip of land for the purposes of widening and improving Randall Road. At the same time, it granted to the County and its "heirs, successors and assigns" an "exclusive permanent easement" for the purpose of stormwater "drainage, detention, retention, and conveyance over, upon, under, across, on and through the Easement Premises." The trial court found that the easement was "available not only to Kane County, as grantee, but also to the county's heirs, successors and assigns" and that, since there were "no capacity limitations applicable to the county's assigns, *** there was no reason for [IC] to seek [Hahn's] approval of its use of the detention facility." There is no assertion that IC is an heir or successor to the County. However, the trial court found IC to be an assign of the County; in doing so, it misinterpreted the term "assign," giving it no more meaning than that of a party that has been invited to partake of the use and enjoyment of the easement. This was error, as a matter of law.

¶ 14     The County did not assign to IC its right in the use of Hahn's property. An assignment is the transfer of some identifiable right, property or claim from the assignor to the assignee. *Toepper v. Brookwood Country Club Road Ass'n*, 204 Ill. App. 3d 479, 489 (1990). It operates to transfer to the assignee all of the assignor's right, title, and interest in whatever is assigned. *Toepper*, 204 Ill. App. 3d at 489. In addition, an easement passes by conveyance of the land to which it is annexed. *Beloit Foundry Co.*, 28 Ill. 2d at 388. There was no such transfer here; the County neither transferred any rights nor conveyed any property. It kept its right to use the easement. The trial court's finding that IC was the County's assign was erroneous.

¶ 15     While not assigning its rights in the easement, however, the County extended an invitation, through the IGA, to "adjacent development" to partake of the easement for stormwater management needs. As we have stated, an easement may not be extended by the owner of the dominant estate to accommodate other lands for which the easement was not originally intended. *Beloit Foundry Co.*, 28 Ill. 2d at 388; *McCann*, 242 Ill. App. 3d at 255. Clearly, the grant of an easement does not contemplate an open invitation to "adjacent

-5-

development" to divert stormwater onto the easement property. No one but an owner of land can create an easement over it. *Waller*, 295 Ill. at 120.

¶ 16 In addition, the IGA does not expand the County's power over the Hahn property. The City argues that this case involves not a "full transfer of the easement" but "the concurrent use of rights by two governmental agencies under the IGA." Section 10 of article VII of the Illinois Constitution provides that units of local government may contract with each other to share or obtain services and to exercise, combine, or transfer any power or function if not otherwise prohibited by law. Ill. Const. 1970, art. VII, § 10. Further, the Illinois Intergovernmental Cooperation Act (Act) provides that local governmental units may jointly exercise powers, privileges, functions, or authority except where specifically and expressly prohibited by law. See 5 ILCS 220/3 (West 2008). Even if, as the City argues, the constitution and the Act encourage governmental bodies to transfer and share powers, neither the constitution nor the Act allows governmental bodies to transfer and share their powers with "adjacent development," such as an auto dealership, that wants to use government property rights as its own. The County cannot use the IGA as a conduit through which it can share with another party, especially with another private entity, the use of its easement over private property.

¶ 17 The County, as easement owner, is entitled to the necessary use of the easement. See *Matanky Realty Group, Inc.*, 367 Ill. App. 3d at 842. "Necessary use" is defined as use that is reasonably necessary for full enjoyment of the premises. *McCann*, 242 Ill. App. 3d at 254-55. The trial court noted that the easement contained "no capacity limitations applicable to the county's assigns." While this is true, it is also irrelevant. The County is not precluded from expanding the capacity of the stormwater detention facility for its own needs and "full enjoyment." However, even a dominant estate is not free to invite whomever it wishes to join in the use of an easement just because there is room to do so. We conclude that the trial court erred in finding that IC was an assign of the County such that it obtained the County's rights to use of the Hahn property under the easement.

¶ 18 The trial court also noted that "the natural flow of rainwater on the subject property" ran from south to north (IC property to Hahn property) and that the law provides that the owner of the higher estate "has the right to allow surface water to follow the natural course of drainage onto the lower estate" and may even construct "artificial devices such as ditches or drains" to more efficiently carry off surface water. This is known as the "civil rule." See *Bollweg v. Richard Marker Associates, Inc.*, 353 Ill. App. 3d 560, 573-74 (2004). The owner of the servient estate is not required to receive surface water in different quantities or at different times than would come to his land ordinarily; however, pursuant to the "good husbandry" exception, the owner of a dominant estate may increase or alter the flow of water upon a servient estate if it is required for the proper husbandry or reasonable development of the dominant estate. *Bollweg*, 353 Ill. App. 3d at 574. Even with this exception, the dominant estate's right to increase the rate or amount of runoff onto the servient estate is not unlimited. *Bollweg*, 353 Ill. App. 3d at 574.

¶ 19 The actions taken by IC, the County, and the City in this case go well beyond the civil rule and the good husbandry exception. In order to handle the flow and detention of stormwater from IC and other "adjacent development," four acre-feet of soil had to be

removed from the Hahn property. In addition, water pipes extending from 150 to 210 feet were placed on the Hahn property. Even good husbandry does not allow for such a substantial incursion on a servient estate.

¶ 20    Defendants raised various affirmative defenses in the trial court, including *laches*, waiver, unclean hands, failure to exhaust administrative remedies, and adequate remedy at law. While the court found that Hahn, through its attorney, was aware as early as 2007 of IC's desire to use the easement for stormwater detention but did not express opposition until 2010, the court did not base its decision on the defense of *laches*, nor did it make any initial finding that Hahn had any rights that were waived or forfeited by *laches*. The court did not even address any of the other defenses. As we have determined that the court erred in entering judgment in defendants' favor based on its finding that IC was an assign of the County under the easement, we must remand the cause for the court's consideration of the affirmative defenses.

¶ 21                                III. CROSS-APPEAL

¶ 22    IC filed a counterclaim against Hahn, alleging that Hahn breached the purchase agreement for the IC property by objecting to IC's use of the stormwater detention facility and instituting its case for injunctive relief. IC sought damages for the resistance to the expansion and sought attorney fees and costs for its successful prosecution of the suit. The trial court entered judgment on the counterclaim in favor of Hahn, as it found "no evidence of damages at this time." IC appeals from the entry of that judgment. The counterclaim alleged that Hahn's actions in resisting the expansion of the easement were a breach of the contract. We deem neither that such appropriate actions by Hahn violated the contract nor that IC has successfully prosecuted this suit; thus, we agree that the counterclaim should have been denied.

¶ 23    IC also cross-appeals from the trial court's denial of its motion for judgment on the pleadings on Hahn's amended complaint. Judgment on the pleadings is proper only if questions of law, and no questions of fact, exist after the pleadings are filed. *Millers Mutual Insurance Ass'n of Illinois v. Graham Oil Co.*, 282 Ill. App. 3d 129, 134 (1996). Our review is *de novo*. *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003).

¶ 24    In its motion, IC argued that Hahn's claims sounded in *quo warranto* and that Hahn had failed to meet the requirements for such a claim. The trial court denied the motion, stating that Hahn was "not limited to an action in quo warranto."

¶ 25    A *quo warranto* action challenges a governmental body's authority to act. *The Reserve at Woodstock, LLC v. City of Woodstock*, 2011 IL App (2d) 100676, ¶ 35. Hahn challenged the County's ability to assign its rights under the easement and also alleged that the County would violate various ordinances and constitutional clauses by allowing the use of the encumbered property. However, several of the allegations cited by IC clearly sounded in contract law, not *quo warranto*. For example, the allegation that "Kane County *cannot assign* its easement rights to St. Charles or [IC]" (emphasis in original) and that "Kane County has no authority to allow [IC] to use the Easement," while speaking to the County's ability to act, challenged not exclusively the County's right or authority to act as a county but its rights and

authority to act as the grantee of an easement. *Quo warranto* was not the exclusive remedy sought, or even alleged, here, and we find no error in the trial court's denial of IC's motion.

¶ 26                                    IV. CONCLUSION

¶ 27        For these reasons, the judgment of the circuit court of Kane County is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

¶ 28        Affirmed in part and reversed in part; cause remanded.