# JOHN D. EASTER

### *v.*

## THE FARMERS' NATIONAL BANK OF SALEM.

1. PARTNERSHIP—*contracts in the firm name entered into by one of the partners after dissolution, whether binding on the others—notice of dissolution.* As a general rule, after a dissolution of a partnership neither partner can make a new contract in the firm name binding on the others, without express authority, and no note, draft or acceptance so executed in the name of the firm will be valid if the party with whom the contract is made had notice of the dissolution.

2. SAME—*authority of one partner to use the firm name after dissolution—how may be given.* Written authority, to authorize one of the partners to use the firm name after the partnership is dissolved, so as to be binding on all, is not required—it may be given by parol. And there are cases which go to the extent of holding that such authority may be inferred from the acts of the parties.

3. EVIDENCE—*of such authority.* In a suit on a promissory note, executed by one partner, in the firm name, after the dissolution of the firm, it

was *held*, the mere fact that the other partners had for some reason paid certain other notes executed by him in the firm name after the dissolution, did not of itself furnish sufficient evidence of authority in such partner to execute the note in question.

4. NOTICE—*what constitutes.* Where the president of a bank had knowledge of the dissolution of a partnership : *Held*, that notice to him constituted notice to the bank.

5. PARTNERSHIP—*unauthorized use of firm name after dissolution—ratification of.* Where one partner, after the dissolution of the partnership, uses the firm name without authority, his act may be subsequently ratified by the others, and the contract will be as binding on them as though their consent had been previously given for that purpose.

APPEAL from the Superior Court of Chicago ; the Hon. JOSEPH E. GARY, Judge, presiding.

This was an action of assumpsit, brought by The Farmers' National Bank of Salem (Ohio), against John D. Easter, Elijah H. Gammon and A. T. Bates, former partners, on a promissory note, signed in the firm name of Easter, Gammon & Bates. A trial in the court below resulted in a judgment against two of the defendants, Easter and Bates, for the amount of the note, with interest, from which judgment Easter appeals. The opinion of the court contains a sufficient statement of the facts.

Messrs. WEST & BOND, for the appellant.

Mr. J. N. BARKER, Mr. WILLIAM HOPKINS and Mr. T. J. TULEY, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court :

The note sued upon was executed by Bates, one of the partners, in the name of the firm of Easter, Gammon & Bates, and it is not denied that prior to its execution the partnership was dissolved. In fact, the firm was dissolved before the execution of the note for which the note now in controversy was given in renewal.

It is not doubted that after a dissolution of a co-partnership, one partner can not use the firm name for the purpose of creating an indebtedness, without the express authority of the other partners so to do.  It is entirely competent for the partner whose name has been used without his authority, after the fact has been done, to ratify the same, and it will be as binding as though the consent had been previously given for that purpose.

The only questions involved in this case are, whether Easter ever gave Bates any authority to execute the note now in controversy, in the name of the firm, or whether he ratified the act after he learned the use that had been made of the firm name.

It appears that at the time of the dissolution of the firm of Easter, Gammon & Bates, on the 1st of January, 1867, the firm had on hand a lot of machines called "fair machines," bought or received of Rank & Co., about which there was a dispute between the parties as to whether the machines were manufactured in accordance with the terms of the contract under which they were received.   The dispute led to unfriendly relations between Easter and the firm of Rank & Co.   Easter insisted that the machines were not manufactured according to the contract and that he would not pay for them.   It seems that Mr. Brooks, of the firm of Rank & Co., was in Chicago, in December, 1866, and at that time had some understanding with Mr. Bates that he should take the machines and pay for them.   Accordingly, in pursuance of that understanding, Bates, soon after the dissolution of the firm, went to Salem, and there, on the 18th of January, 1867, made a settlement with Rank & Co. of the difficulty about the machines.   It was then agreed that Bates should take the machines and pay for them.   The firm of Rank & Co. were then notified of the dissolution of the firm of Easter, Gammon & Bates.   When the parties came to close up the matter, Bates offered to give his own paper, but Rank & Co. declined to receive it, and insisted upon having a firm note, and thereupon Bates executed to Rank & Co., notes to the amount of $35,000 in the firm name of Easter, Gammon & Bates, being for the value of the unsold machines then turned

over to Bates; at the same time Bates required Rank & Co. to execute a paper releasing Easter from liability on account of the notes. Such a paper was executed and delivered to Bates, but was never delivered to Easter. Two of the notes executed by Bates on the 18th of January, 1867, were for $10,000 each and three were for $5000 each. Something was paid on one of the $10,000 notes, and Bates subsequently executed a new note in the firm name of Easter, Gammon & Bates, for the sum of $5410.05, for the balance due on that note, and sent it to Rank & Co. This last note was discounted by appellee for Rank & Co. The note was again renewed by Bates, in the firm name, after it was in the hands of the appellee, and this is the note now in controversy.

It appears that Mr. Brooks, who was a member of the firm of Rank & Co., is also president of the "Farmers' National Bank of Salem," the appellee. It is not questioned that Mr. Brooks had notice of the dissolution of the firm of Easter, Gammon & Bates, before the execution of the note discounted by the bank, and notice to him must be held to constitute notice to the appellee, of that fact. In addition to the notice to the president of the bank, the cashier also testified that he probably had notice of the dissolution of that firm before the renewal of the note. The appellee, therefore, having had notice of the dissolution of the firm of Easter, Gammon & Bates, it was for it to inquire what authority, if any, Bates had for using the firm name. If the bank failed to make such inquiry after notice, and Bates had no authority to use the firm name, it must suffer the consequences of its own neglect in that regard.

What agreement or understanding was had between the members of the firm of Easter, Gammon & Bates, at the time of the dissolution, or afterwards, in regard to closing up the business of the firm, this record does not expressly show. It certainly does not affirmatively appear by any direct evidence, that Bates was ever authorized to use the name of the firm in liquidation or otherwise.

It is insisted that this authority need not be expressly given; that it may be implied or inferred from circumstances. Written authority is certainly not required. It may be given by parol, and there are cases that go to the extent of holding that the authority may be inferred from the acts of the parties. *Smith* v. *Winter*, 4 M. & W. 454; *Graves* v. *Mery*, 6 Cow. 701.

The general rule, however, is, that after a dissolution of a partnership, neither party may make a new contract in the firm name, binding on the others, without express authority, and no note, draft or acceptance executed in the name of the firm, will be valid unless executed by all the partners, if the party with whom the contract is made had notice of the dissolution. *Ellis* v. *Bronson*, 40 Ill. 455.

We are unable to discover any evidence of facts in this record, that would estop Easter from denying that the note was executed in the firm name with his consent, nor do we find any clear and distinct evidence that he ever ratified the act after it came to his knowledge, or that he did any act that misled the parties to their injury.

It is insisted that Easter ratified the settlement made by Bates in January, 1867, and from that fact it is urged it may be inferred that he consented to the use of the firm name in the execution of the notes, and that that consent would be continued to the several renewals. We do not so understand the evidence. Bates positively states that the arrangement was made for his own benefit, and Easter expressly denies that he ever ratified the settlement. Even Mr. Brooks, when inquired of whether Easter ever ratified the settlement made by Bates in January, 1867, answered in the negative, and the context does not show to the contrary. The record imports verity, and the suggestion of counsel that some error has crept into the record on that question can not be considered.

It is further insisted, that Bates, when he returned to Chicago told Easter what he had done, and that Easter ought not to have remained silent. Exactly what information was imparted to him on the return of Bates, the evidence does not disclose,

220       EASTER *v.* FARMERS' NATIONAL BANK.   [Sept. T.,

Opinion of the Court.

but we are informed that he was then told that Rank & Co. had released him, and that fact is sufficient to explain his silence. If he was released, he need concern himself no further.

Another fact relied on is, that Easter and Gammon subsequently paid two notes, executed in the name of the old firm by Bates after the dissolution of the firm. The explanation of this transaction furnished by the evidence, is, that one of the notes for some reason not explained was renewed in the individual names of the partners, and the other was indorsed by Gammon. If, for any reason, they felt under obligations to pay these notes, that fact does not, of itself, furnish sufficient evidence of authority in Bates to execute the note now in question in the firm name.

We are, therefore, of opinion that the evidence fails to show that Bates had any authority to use the firm name for the purpose of executing the note on which this action is brought, or that Easter, after he had learned the use that had been made of the firm name, ever ratified the act or did anything that would mislead the parties to their injury. The appellee, through its president, Mr. Brooks, and the subsequent knowledge of the cashier, had sufficient actual knowledge of the dissolution of the firm, and of all the facts, before it discounted the note for the benefit of Rank & Co., and, having had such notice, it was its duty to inquire what authority, if any, Bates had to execute the note in the name of the firm, and if it failed to do so, the consequences are the result of its own neglect.

If the testimony of Bates is to be relied on, the notes were originally given, and the renewals made, for his own debt, and for his benefit, and not for the debt or benefit of the old firm.

We are not satisfied with the finding of the court, on the evidence preserved in the record, and for the reasons indicated the judgment will be reversed and the cause remanded.

*Judgment reversed.*