# Oneida State Bank, Appellant, v. C. A. Peterson et al., Appellees.

## Gen. No. 7,108.

1. PARTNERSHIP—*dissolution by death.* Death of a partner dissolves the firm unless there is an express agreement for its continuation.

2. PARTNERSHIP—*effect of dissolution on authority of partners.* The dissolution of a partnership does not revoke the authority to arrange, liquidate, settle and pay debts already created, but it operates as a revocation of all authority for making new contracts.

3. PARTNERSHIP—*power of surviving partner to execute note in firm name after dissolution.* Where there was an agreement on the part of a partnership to give a certain note in satisfaction of a preexisting, valid indebtedness, the surviving partners, after dissolution of the firm by the death of one member, had power to execute such note in the firm name.

4. EVIDENCE—*admissibility of canceled notes in action on renewal note.* In a suit upon a promissory note executed in the name of a partnership by surviving members after dissolution of the firm by death of one member, such note having been authorized before the death of such member, canceled notes, to replace which the note in question was executed, were admissible to prove the original indebtedness.

5. EVIDENCE—*admissibility of note sued on in action against partners on note executed for firm by member after dissolution of firm.* In an action upon a promissory note executed in a firm name after the death of one of the partners, but under an agreement to execute such a note made before such death, the note sued upon was admissible in evidence.

6. EVIDENCE—*admissibility of declarations and admissions of partners in action on note executed in firm name.* Where there was competent evidence tending to show that a note sued upon was given for an indebtedness which was a liability of a partnership, conversations, admissions and declarations of members of the firm were admissible.

Appeal from the Circuit Court of Knox county; the Hon. WALTER C. FRANK, Judge, presiding. Heard in this court at the April term, 1922. Reversed and remanded with directions. Opinion filed October 25, 1922. Rehearing denied January 4, 1923.

FLETCHER CARNEY, JAMES W. CARNEY and SIG. B. NELSON, for appellant.

E. P. FIELD, WILLIAMS, LAWRENCE, GREEN & GALE and MARSH & RICE, for appellees.

MR. PRESIDING JUSTICE JONES delivered the opinion of the court.

A statement of this case will be found in the opinion of this court in *Oneida State Bank v. Peterson*, 211 Ill. App. 655. It is therefore unnecessary for us to restate the facts there stated. After the cause was redocketed in the circuit court, a trial was had before a jury. The court gave a peremptory instruction at the conclusion of all of the evidence offered on behalf of the plaintiff to find a verdict in favor of the defendants. Judgment was entered on the directed verdict and the cause is again before us on appeal.

After the cause was remanded by this court, the plaintiff filed two additional counts to the declaration, wherein it was averred that the defendants were copartners doing business under the firm name of S. J. Metcalf and Company and that they carried a checking account with the plaintiff bank from July, 1906, until January 1, 1915, when W. D. Patty, one of the partners died; that prior to the death of the said Patty, to wit, on December 8, 1914, the said copartners were indebted to the plaintiff in the sum of $8,323.58; that on said date an accounting was had between the plaintiff and the defendants whereby it was ascertained that there was due from the defendants to the plaintiff the sum above mentioned; that it was thereupon agreed that in settlement of said amount due as aforesaid, the defendants would give a mortgage on certain Canada land to secure the payment of the sum of $5,000 of said indebtedness and would also give their promissory note for the balance, amounting to the sum of $3,323.58, payable December 8, 1914, with

interest thereon at the rate of six per cent per annum; that the delivery of said note was deferred awaiting the execution and delivery of the said mortgage; that after the death of said Patty the note sued on was executed and delivered on behalf of said copartners and in pursuance of said above-mentioned agreement. Pleas were filed to these counts and issue joined. After the trial had been entered upon, leave was granted to the defendants Murdock and Field to demur to the first replication to the ninth plea to the additional counts and the said two defendants moved that the demurrer be carried back to the additional counts. The court sustained the demurrer and carried it back to the additional counts. Error is assigned on the court's ruling in sustaining the demurrer to the additional counts. This raises the question whether or not a note is valid which has been given by the surviving members of a partnership subsequent to the death of a deceased partner, in settlement of a pre-existing and valid debt of said copartnership and in pursuance of an agreement made during the lifetime of such deceased partner. As a general proposition, the death of a partner dissolves the firm unless there was an express agreement for its continuation. The dissolution of a partnership does not revoke the authority to arrange, liquidate, settle and pay debts already created, but it operates as a revocation of all authority for making new contracts. And it has been held in *Bank of Montreal v. Page,* 98 Ill. 120, that the giving of a promissory note or the acceptance of a bill of exchange or draft is the making of a new contract, although it may be for a prior debt, and a partner, after dissolution, cannot thus bind the firm. We apprehend that the rule just announced was not intended by the Supreme Court to have any application to a case where the partners had expressly agreed before dis-

solution that one or more of the members might give a note in satisfaction of a then existing debt. That the court recognizes the power of surviving partners to give a note when such action had been previously agreed upon is evident from the language of the opinion in the case of *Easter v. Farmers' Nat. Bank of Salem,* reported in 57 Ill. 215, where it is said, on page 219, that the general rule is, that after dissolution of a partnership, neither party may make a new contract in the firm name, binding on the others "without express authority."

It cannot be well doubted that where express authority is given, during the existence of a partnership, for a surviving partner to execute a contract after dissolution, the same may be done. It is entirely competent for partners to provide that the death of a member shall not dissolve the firm and that the business shall be continued. (30 Cyc. 636.) And it is also said (30 Cyc. 668), that although "after the dissolution of a partnership neither partner has implied authority to bind the firm or his copartners by making, renewing or indorsing negotiable paper in the firm name," nevertheless, "authority to do either of these acts after dissolution may be given during the existence of the partnership." In the instant case, the additional counts aver an agreement on the part of the firm to give the precise note sued on in this case in satisfaction of a pre-existing, valid indebtedness. While it is true that the additional counts do not aver that authority was expressly given to execute and deliver the note after the dissolution of the partnership, the alleged agreement is so broad and comprehensive in its character that the power to give the note in question after the death of Patty seems undeniable. Such is the view expressed in the opinion of the case of *Richardson v. Moies,* 31 Mo. 430. In that case the firm had agreed with the holder of one of its notes that it should be renewed at maturity upon a partial pay-

ment being made and that a new note should be given for the balance. The new note agreed upon was given in the firm name after the dissolution of partnership occurred and it was held that the surviving partners were authorized to give it. We, therefore, think that the additional counts stated a good cause of action and that the court was in error in carrying back and sustaining the demurrer to them.

Appellant attempted to prove that there was a bona fide partnership indebtedness back of the note sued on and for which all of said defendants were liable. As a part of the proof of this alleged fact, certain notes which were held by the bank, and which were surrendered at the time the note sued on was given, were offered in evidence but were not admitted because of the objection made by the defendants, Murdock and Field. There was evidence in this case tending to show that there was a partnership consisting of the four defendants and the deceased Patty, for the purpose of carrying on a business of buying and selling Manitoba lands; that they did buy and sell such lands and also acquired a certain piece of real estate located in Oneida known as the Oneida Hall or Union Hall property; that rents and income from this property were deposited in the appellant bank in the name of S. J. Metcalf and Company; that said account had been an active account for a number of years; that appellant knew of the existence of such account, claimed an interest therein and demanded and received money therefrom. There is other evidence in the record, as well as that above mentioned, tending to prove that appellees were doing business with the appellant bank under the firm name of S. J. Metcalf and Company. This court said in its opinion when this case was before us on the former occasion that under the pleadings the bank had a legal right to show the original indebtedness. The said canceled notes were, in view of the evidence above referred to, competent

evidence tending to show what the original indebtedness was. They were also competent under the additional counts in connection with other proof in reference to the alleged agreement between the firm and the bank in the lifetime of Patty to give the notes sued on.

We are also of the opinion that the note sued on, and known as plaintiff's exhibit 2, should not have been excluded but should have been admitted. As heretofore stated, there was evidence in the case tending to show that appellees were doing business with appellant under the firm name of S. J. Metcalf and Company, and that the note was executed under the firm name, pursuant to an agreement therefor, made in the lifetime of all the firm members.

The court refused to permit plaintiffs to prove conversations, admissions and declarations of certain of the alleged members of said firm. The court's ruling was based upon the belief that there was no competent evidence in the record tending to show that the indebtedness was a liability of such firm or copartnership. However, as we view the record, there was evidence tending to show the existence of such copartnership and the liability of such copartners for the debt in question. Under such a situation, the rejected evidence should have been admitted.

In *Conlan v. Mead,* 172 Ill. 13, it was held that in a suit against two or more persons as partners, if sufficient evidence has been admitted to raise a fair presumption on the evidence of the partnership, then the acts and declarations of each are admissible against the others to strengthen the prima facie case already made.

The record in this case was not carefully abstracted by appellant. It has been most difficult for us to ascertain the state of the pleadings and to find the rulings of the court in a number of instances. While much space is given to a verbatim recital of questions

and answers contrary to the rules of this court, the abstract, so far as it endeavors to set out the pleadings and rulings of the court, is to a large degree but an index to the record. Frequent mistakes are made in page references. For instance, the index shows that the rulings as to the admission of such important exhibits as 7, 8 and 9 (being some of the canceled notes) are to be found on pages 123, 192 and 211 of the record. An examination of said pages 123, 192 and 211 will disclose that no rulings of the court as to the admissibility of said exhibits 7, 8 and 9 can be found thereon. No citation to the page of the abstract is given as to exhibits 6 to 13, both inclusive. Other similar mistakes might be easily pointed out. Because of the inaccuracies and the insufficiencies of the abstract, this court has been compelled to devote a great deal more time to the study of the case than would have been necessary if more care had been taken in the preparation of the abstract.

On account of the errors of the court in sustaining the demurrer to the additional counts, excluding competent evidence as herein pointed out and in directing a verdict in favor of appellees, this cause is reversed and remanded for a new trial with directions to the court to overrule the demurrer to the first replications to the ninth plea to the additional counts, to overrule the demurrer to the additional counts, for a new trial and for further proceedings in conformity with this opinion.

*Reversed and remanded with directions.*