# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Cross v. O'Heir*, 2013 IL App (3d) 120760

---

| | |
|---|---|
| Appellate Court Caption | ROBERT CROSS, Plaintiff-Appellee, v. SANDRA M. O'HEIR, as Executor of the Estate of Estate of Richard J. O'Heir, THE ESTATE OF RICHARD J. O'HEIR, LOCATION FINDERS INTERNATIONAL, INC., as president of Location Finders International, Inc., THE RICHARD J. O'HEIR FAMILY TRUST UAD JULY 21, 2003, THE RICHARD J. O'HEIR REVOCABLE TRUST UAD JULY 26, 1989, GEORGE S. SARRIS, DAN REGAN, MICHELLE CASTELLARIN, KATHLEEN LEHNERER, JULIE QUINN, MARGARET MARY ZEGLEY, RICHARD J. O'HEIR, and UNKNOWN OWNERS, Defendants-Appellants (Sandra M. O'Heir, as Executor of the Estate of Richard J. O'Heir, The Estate of Richard J. O'Heir, The Richard J. O'Heir Family Trust UAD July 21, 2003, The Richard J. O'Heir Revocable Trust UAD July 26, 1989, Sandra M. O'Heir and Gary L. Penrith, as Co-Trustees of the Marital Trust created by Richard J. O'Heir Revocable Trust under Agreement Dated July 26, 1989, as amended, Counterplaintiffs and Counterdefendants-Appellants; George S. Sarris, Counterdefendant and Counterplaintiff-Appellee). |
| District & No. | Third District<br>Docket No. 3-12-0760 |
| Filed | August 2, 2013 |
| Rehearing denied | August 30, 3013 |

Held

(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*)

In an action arising from the dissolution of a partnership between counterplaintiff's deceased husband and counterdefendant created for the development of a certain real estate, the trial court properly entered summary judgment for counterdefendant on counterplaintiff's claim that counterdefendant had created an easement that included property owned by decedent and benefitted the property she inherited, since counterdefendant had neither the power nor the intention to create an easement over property he did not own; however, summary judgment was properly entered on his claim for certain fees and expenses he was owed under the partnership agreement.

Decision Under
Review

Appeal from the Circuit Court of Will County, No. 07-CH-2347; the Hon. Rick Mason, Judge, presiding.

Judgment

Affirmed.

Counsel on
Appeal

Raymond E. Stachnik (argued), of Raymond E. Stachnik & Associates, Ltd., of Chicago, for appellants.

Gary S. Mueller (argued), of Gary S. Mueller & Associates, Ltd., of Joliet, for appellees.

Panel

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Presiding Justice Wright and Justice Carter concurred in the judgment and opinion.


**OPINION**


¶ 1     In 1987, George Sarris and Richard O'Heir became business partners. Richard O'Heir died in 2006, and his wife, Sandra, was appointed executor of his estate. In 2008, Sandra O'Heir filed an action against Sarris, seeking a declaration that a cross-access easement created by Sarris and adjoining property owners included O'Heir property. Sarris filed a counterclaim for dissolution of the partnership and an accounting. The parties filed motions for summary judgment, and the trial court granted Sarris's motion with respect to Sandra O'Heir's easement claim and Sarris's dissolution and accounting claim. The trial court later granted judgment in favor of Sarris and against O'Heir for $34,461.47. We affirm.

-2-

¶ 2 In 1987, George Sarris and Richard O'Heir entered into a partnership named Georgetown Estates. The purpose of the partnership was to develop 77 acres of real property located on Route 30 in Frankfort. The partnership agreement provided that the partnership would continue for 40 years unless terminated sooner by operation of law or agreement of the partners. The agreement provided that the death of a partner would have no effect upon the continuation of the partnership business.

¶ 3 According to the partnership agreement, Sarris would be managing partner. Upon termination of the partnership, Sarris was to perform an accounting and liquidate the assets of the partnership. The agreement further provided that Sarris, as managing partner, could employ or engage individuals to "render services, including, but not limited to, *** accounting and legal services, and he or they shall be entitled to be compensated for such services as partnership expenses."

¶ 4 In 1996, after Georgetown Estates had developed most of the 77 acres in Frankfort, Sarris and O'Heir agreed to divide the remaining partnership property into two parcels. O'Heir became the equitable owner of the western 540 feet of the parcel. Sarris became the equitable owner of the remainder of the property. Legal title to the property was held in a trust known as Trust No. 7-1580, with First Star Bank Illinois acting as the trustee.

¶ 5 In August 2000, Sarris filed a complaint, seeking dissolution of the Georgetown Estates partnership and an accounting and alleging breach of contract against O'Heir. Sarris voluntarily dismissed his partnership dissolution and accounting claim. A bench trial was held on Sarris's breach of contract claim, and the trial court entered judgment in favor of Sarris for $135,889.50, plus $16,365.14 in attorney fees and $2,600 in appraiser's fees. O'Heir appealed. We reversed the trial court's decision and granted judgment to O'Heir. *Sarris v. O'Heir*, No. 3-02-0512 (2003) (unpublished order under Supreme Court Rule 23).

¶ 6 In June 2001, a cross-access easement was recorded between three entities: Trust No. 6351, Trust No. 7-1580, and System Capital Real Property Corporation (SCC). The property owned by SCC is referred to as "Parcel 1" in the easement agreement. The property held in Trust No. 6351 is referred to as "Parcel 2" in the easement agreement. The property held in Trust No. 7-1580 is referred to as "Parcel 3." The legal description of "Parcel 3" includes the partnership property awarded solely to Sarris in 1996 and excludes "the West 540 feet thereof, taken as a Tract." The western 540 feet of the property held in Trust No. 7-1580 is owned by O'Heir, pursuant to the 1996 agreement between Sarris and Richard O'Heir to divide the remaining partnership property.

¶ 7 The purpose of the easement agreement was for the owners of the respective properties "to grant and to receive certain easements over, under and across Parcel 1, Parcel 2 and Parcel 3." The agreement provided that Trusts 6351 and 7-1580 "grant and convey to SCC, a perpetual non-exclusive easement appurtenant to Parcel 1, for the use and benefit of SCC, its successors, assigns, licensees, tenants, suppliers and customers, for a full access road and driveway to permit vehicular and pedestrian ingress and egress, to and from Parcel 1, over, upon and across that part of Parcels 1, 2 and 3 described in Exhibit D." The legal description of the easement contained in exhibit D states that the east to west dimension of the easement is 543.39 feet.

¶ 8        The agreement further provided that "Each Trust reserves and SCC grants a perpetual, non-exclusive easement, appurtenant to Parcel 2 and Parcel 3 *** for the purpose of vehicular and pedestrian ingress and egress, to and from Parcel 2 and Parcel 3 *** over, upon and across that portion of Parcel 1 as described on Exhibit D, attached." Finally, the agreement stated that the trusts reserved an "access easement across the West line of the premises at a location within 50' North of the Southwest corner thereof, for the benefit of adjoining property to the West."

¶ 9        In April 2004, Sarris filed an action for declaratory relief and a temporary restraining order against O'Heir, the successor trustee of the partnership's real property, and Georgetown Estates, to prevent O'Heir from selling his property to anyone except Sarris. The trial court entered judgment in favor of Sarris. This court reversed and entered judgment in favor of O'Heir, finding that the 1996 agreement between the parties removed any partnership interest in the property, making it separately owned by each partner. *Sarris v. O'Heir*, No. 3-04-0968 (2005) (unpublished order under Supreme Court Rule 23).

¶ 10       Richard O'Heir died in July 2006. His wife, Sandra O'Heir, was appointed executor of his estate. At the time of Richard's death, the only remaining assets of the partnership were two outlots that had not yet been sold or given away.

¶ 11       In March 2008, Sandra O'Heir filed a claim against Sarris, seeking a declaratory judgment on the interpretation of the cross-access easement. She alleged that the easement benefits and includes the estate's property. Attached to the counterclaim was a plat of survey prepared by Rogina & Associates in 2002 that shows the easement crosses the western line dividing Sarris's property and O'Heir's property.

¶ 12       In 2008, a new plat of easement was recorded. The new east-west dimension of the cross-access easement was 542.39 feet. David Tyson, who prepared the revised easement, explained that he recorded the new plat at the direction of Sarris to make clear that the easement created in 2001 was not intended to benefit O'Heir's property.

¶ 13       In May 2008, Sarris filed a counterclaim against Sandra O'Heir. Count I requested an order allowing Sarris to purchase any remaining assets of the partnership and award him damages for breach of the partnership agreement. Count II requested an accounting and dissolution of the partnership. Count III alleged fraud against Sandra O'Heir.

¶ 14       Sarris filed a motion for summary judgment with respect to O'Heir's easement counterclaim. Attached to the motion were deposition transcripts from various individuals. Sarris testified at his deposition that he entered into an easement agreement with the owners of Parcels 1 and 2 identified in the easement agreement. It was his intention that the easement benefit his property, not O'Heir's property. O'Heir was not a party to the easement agreement.

¶ 15       David Tyson, a registered professional engineer and land surveyor retained by Sarris, testified at his deposition that he created and recorded an easement for Sarris and the property owners identified in the easement agreement at Sarris's direction. He testified that the easement on Sarris's property was outside the west 540 feet of the north property line and was contained entirely within Sarris's property. He further testified that it was Sarris's intent that the easement would go just to the line of O'Heir's property, but not over it, and that the

easement would cover only Sarris's property. Tyson also testified that the owner of property cannot grant an easement over property he does not own.

¶ 16     John Kella, a land surveyor retained by O'Heir, testified that the company he works for, Rogina & Associates, created a survey in 2002 to determine the scope of the 2001 easement, at O'Heir's request. According to Rogina's plat of survey, the easement extends approximately two inches onto O'Heir's property.

¶ 17     Timothy Atchinson, a title attorney and law professor who was retained by Sarris, testified at his deposition that he reviewed the easement grant recorded in 2001, as well as the surveys completed by Tyson and Rogina. He testified that before a land owner can be a third-party beneficiary to an easement, two requirements must be met: (1) the legal description of the easement must extend onto the land of the third party, and (2) there must be granting language extending the easement onto the third party's property. He opined that the easement agreement at issue was not intended to benefit O'Heir's land because it specifically states that the easement is over Parcels 1, 2 and 3, which does not include O'Heir's property.

¶ 18     O'Heir filed a cross-motion for summary judgment on the easement counterclaim. In March 2011, O'Heir and Sarris agreed that O'Heir would execute a quitclaim deed to Sarris for the two outlots still owned by the partnership in exchange for Sarris dismissing count I of his complaint against Sandra O'Heir.

¶ 19     In May 2011, the trial court granted Sarris's motion for summary judgment with respect to O'Heir's easement claim, finding that it was not Sarris's intent for the easement to benefit O'Heir's property. The trial court also granted summary judgment to Sarris on his partnership dissolution and accounting claim, finding that the partnership would be dissolved only when all partnership property was developed, sold or divided, which would not occur until O'Heir delivered quitclaim deeds to Sarris for the outlots still owned by the partnership. The trial court granted O'Heir's motion for summary judgment with respect to Sarris's fraud counterclaim against O'Heir.

¶ 20     Thereafter, the trial court held a bench trial on Sarris's accounting claim. At the trial, Sarris argued that he was entitled to $210,000 from O'Heir for serving as general contractor for the partnership project. Sarris also asserted that he was entitled to reimbursement of $21,875 for excavation, $21,872.25 for real estate taxes, and $33,198.01 in legal fees. The trial court rejected Sarris's claim for general contractor fees but found that Sarris was entitled to $17,500 for excavation, $10,731.47 for real estate taxes, and $7,230 for legal fees. The trial court entered judgment in favor of Sarris for $35,461.47. O'Heir filed a motion to modify the judgment. The court ruled that O'Heir owed Sarris $16,500 for excavation and modified the judgment to $34,461.47.

¶ 21                                         ANALYSIS

¶ 22     Summary judgment is appropriate when the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012). The purpose of summary judgment is not to try a question of fact, but

to determine whether a genuine issue of triable fact exists. *In re Marriage of Maurice B.H.*, 2012 IL App (1st) 121105, ¶ 17. In determining whether a question of fact exists, "a court must construe the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent." *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). We review a grant of summary judgment *de novo. Id.*

¶ 23                              I. O'Heir's Easement Claim

¶ 24       An easement provides a privilege or a right in the use of another's property. *Hahn v. County of Kane*, 2012 IL App (2d) 110060, ¶ 10. An easement provides use rights; it does not provide ownership rights or an ownership interest in land. *Id.* "No one but an owner of land can create an easement over it." *Id.* ¶ 11.

¶ 25       An instrument creating an easement is construed in accordance with the parties' intention, which is ascertained from the words of the instrument and the circumstances contemporaneous to the transaction, including the state of the thing conveyed and the objective to be obtained. *Id.* ¶ 12. Interpretation of an easement is a question of law that we review *de novo. Smith v. Heissinger*, 319 Ill. App. 3d 150, 153 (2001).

¶ 26       Where the language of an agreement is facially unambiguous, the trial court interprets the contract as a matter of law, without the use of extrinsic evidence. *Hahn*, 2012 IL App (2d) 110060, ¶ 12. However, where the documents creating the easement are ambiguous, a trial court may admit and consider extrinsic evidence. *Smith*, 319 Ill. App. 3d at 153.

¶ 27       We find the language of the cross-access easement in this case to be ambiguous. While the legal description of "Parcel 3" contained in the easement agreement specifically excludes the western 540 feet owned by O'Heir, another provision of the agreement states that there is an access easement "across the west line of the premises of a location within 50 feet north of the southwest corner thereof, for the benefit of adjoining property to the west." The property described in that provision seems to be O'Heir's property.

¶ 28       Since the easement is ambiguous, the trial court properly looked to extrinsic evidence to determine the intent of the parties in creating the easement. The evidence introduced by Sarris showed that the easement was created to benefit Sarris's property and not O'Heir's. Sarris was the one who directed Tyson to record the easement. O'Heir was not involved in the creation of the easement or the easement agreement. Sarris intended for the easement to be over only his property.

¶ 29       O'Heir's evidence showed that the original easement possibly encroached on her property by a couple of inches. However, O'Heir provided no evidence that Sarris intended for the easement to be over O'Heir's property. Moreover, Sarris had no power to create an easement over O'Heir's property. See *Hahn*, 2012 IL App (2d) 110060, ¶ 11. Thus, the trial court properly granted summary judgment on O'Heir's easement claim.

¶ 30                    II. Sarris's Partnership Dissolution and Accounting Claim

¶ 31       O'Heir argues that the trial court erred in granting summary judgment to Sarris on his partnership dissolution and accounting claim because it was untimely. She contends that

Georgetown Estates was constructively dissolved in 1996, when the remaining parcel of partnership property was divided between the partners.

¶ 32    Dissolution of a partnership is defined as "the change in the relation of the partners caused by any part[y] ceasing to be associated in the carrying on *** of the business." (Internal quotation marks omitted.) *Schlossberg v. Corrington*, 80 Ill. App. 3d 860, 863 (1980). "[A]n obvious prerequisite to a dissolution of a partnership is its actual existence at the time dissolution is sought." *Id.* at 864.

¶ 33    A partnership may be dissolved either by judicial order or by operation of law. *Id.* at 863. As a general rule, the death of a partner dissolves a partnership unless there is an express agreement that the partnership will continue thereafter. *Oneida State Bank v. Peterson*, 226 Ill. App. 381, 383 (1922). A judicial order of dissolution may be granted upon application by a partner if the court finds that the partnership business cannot be carried on as set forth in the partnership agreement. 805 ILCS 206/801(5) (West 2012).

¶ 34    Each partner is entitled to a settlement of all partnership accounts upon the dissolution of a partnership. 805 ILCS 206/807(b) (West 2012). A partner's right to an accounting accrues at the date of dissolution. *Couri v. Couri*, 95 Ill. 2d 91, 100 (1983); *In re Estate of Krevchena*, 244 Ill. App. 3d 160, 164 (1993). An accounting action may be brought after or at the same time as a partnership dissolution action. *Hildebrand v. Topping*, 240 Ill. App. 3d 104, 109 (1992).

¶ 35    Here, the partnership agreement for Georgetown Estates provided that the partnership would continue for 40 years unless terminated sooner by operation of law or agreement of the partners. While the death of a partner normally dissolves a partnership, that did not happen here because the partnership agreement stated that the partnership would continue thereafter. See *Peterson*, 226 Ill. App. at 383. Nevertheless, O'Heir contends that the partnership was dissolved even before her husband's death in 2006, because the partnership stopped conducting partnership business in 1996, when nearly all of the partnership property had been sold. We disagree.

¶ 36    While the majority of the partnership property was sold or transferred by 1996, the partnership still had possession of certain outlots at that time. It was not until 2011 that those outlots were transferred. Because the partnership retained property until 2011, the trial court did not err in finding that the partnership was not dissolved until then.

¶ 37    Additionally, the trial court did not err in allowing Sarris's accounting action in spite of O'Heir's claim that it was untimely. A partner's right to an accounting accrues when the partnership is dissolved. *Couri*, 95 Ill. 2d at 100; *Krevchena*, 244 Ill. App. 3d at 164. Since the partnership was not dissolved until 2011, Sarris's accounting claim, which was filed with his dissolution action in 2008, was not untimely.

¶ 38                                III. Judgment Amount

¶ 39    Finally, O'Heir argues that the trial court erred in ordering her to pay Sarris $34,461.47 for partnership debts.

¶ 40    In settling the accounts and contributions among partners following the dissolution of a

partnership, each partner shall contribute to the partnership an amount equal to any excess of the charges over the credits in the partnership's account. 805 ILCS 206/807(b) (West 2012). The estate of a deceased partner is liable for the partner's obligation to contribute to the partnership. 805 ILCS 206/807(e) (West 2012).

¶ 41    The amount of partnership debt is generally a question of fact for the trial court. See *Seymour v. Williams*, 249 Ill. App. 3d 264, 274 (1993). A reviewing court will not disturb a trial court's determination of partnership debt unless it is against the manifest weight of the evidence. *Id.* An award is contrary to the manifest weight of the evidence where the trial court ignored the evidence or its measure of damages was erroneous as a matter of law. *Meade v. Kubinski*, 277 Ill. App. 3d 1014, 1017 (1996).

¶ 42    At trial, Sarris claimed that he was entitled to reimbursement from O'Heir for nearly $300,000, including $210,000 in general contractor fees, $21,875 for excavating fees, $21,872.25 in real estate taxes, and $33,198.01 in attorney fees. The trial court considered each of these claims and determined that (1) Sarris was not entitled to reimbursement for general contractor fees because the partnership agreement did not provide for such fees; (2) Sarris was entitled to $16,500 in excavating fees; (3) Sarris was entitled to $10,731.47 (less than half of the amount claimed by Sarris) as reimbursement for partnership real estate taxes paid from 1990 through 2010; and (4) Sarris was entitled to $7,230 in attorney fees, representing half of the legal fees Sarris incurred in the partnership dissolution and accounting action. The trial court entered judgment against O'Heir for $34,461.47, which was 11% of the amount Sarris claimed O'Heir owed him under the partnership agreement. Based on the court's thorough review and reduction of Sarris's monetary claims, the damage award was not against the manifest weight of the evidence.

¶ 43    For the foregoing reasons, the judgment of the trial court of Will County is affirmed.

¶ 44    Affirmed.