2020 IL App (1st) 190609-U

FOURTH DIVISION
April 30, 2020

Nos. 1-19-0609 & 1-19-1767 (cons.)

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | |
|---|---|
| THE DEPARTMENT OF TRANSPORTATION OF THE STATE OF ILLINOIS, for and on behalf of the People of the State of Illinois,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ALPHA MED PHYSICIAN ENTERPRISES, LLC, an Illinois limited liability company; CITIBANK, N.A.; WEILAND STEEL, INC.; PRIVATE BANK AND TRUST CO., as trustee under trust agreement dated June 1, 1972 and known as trust No. 897; HIGH STREET DEVELOPMENT, LLC; NON-RECORD CLAIMANTS AND UNKNOWN OWNERS,<br><br>　　　　Defendants,<br>_____<br><br>ALPHA MED PHYSICIAN ENTERPRISES, LLC, and CITIBANK, N.A.,<br><br>　　　　Counterplaintiffs-Appellants,<br><br>v.<br><br>THE DEPARTMENT OF TRANSPORTATION OF THE STATE OF ILLINOIS,<br><br>　　　　Counterdefendant-Appellee, | Appeal from the<br>Circuit Court of<br>Cook County<br><br><br><br><br><br><br><br><br><br><br>No. 11 L 50583<br><br><br><br><br><br><br><br><br><br><br><br><br><br>Honorable<br>James M. McGing,<br>Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Gordon concurred in the judgment.
Justice Lampkin specially concurred.

**ORDER**

¶ 1    *Held*:  We affirm the judgment of the circuit court of Cook County granting counterdefendant's cross-motion for summary judgment where counterplaintiffs failed to demonstrate an uncompensated taking occurred.

¶ 2    The Department of Transportation of the State of Illinois (IDOT) filed a complaint for condemnation against counterplaintiffs Alpha Med Physician Enterprises, LLC, and Citibank, N.A. (collectively Alpha Med), seeking to acquire land in fee simple and a temporary easement. The circuit court of Cook County thereafter allowed IDOT to condemn the requested property. Alpha Med subsequently filed a counterclaim alleging IDOT's reconstruction of a drainage ditch in its temporary easement on Alpha Med's property constituted a permanent taking for which Alpha Med was not compensated. The parties filed cross-motions for summary judgment on Alpha Med's counterclaim. The circuit court denied Alpha Med's motion and granted IDOT's cross-motion. On appeal, Alpha Med argues summary judgment in favor of IDOT was in error because IDOT's construction of the drainage ditch was outside the scope of the temporary easement for which Alpha Med was compensated. For the reasons which follow, we affirm.

¶ 3                          BACKGROUND

¶ 4    This controversy arose from an IDOT project to expand U.S. Route 45 (LaGrange Road) from 131st Street to 179th Street. Alpha Med owns property on the east side of LaGrange Road, adjacent to the highway, between 173rd Street and 175th Street.[1] To the west of LaGrange Road, across from Alpha Med's property, is 54 acres of Cook County forest preserve land. Prior

---

     [1] The record is unclear as to Alpha Med's exact property lines. Based on our review of the record, the property line appears to start between 173rd Street and 174th Street and appears to extend to an area between 174th Street and 175th Street.

to this lawsuit, there were two 30-inch culverts, or drainage pipes, under LaGrange Road which drained water from the forest preserve onto Alpha Med's property. The water flowed from west to east under LaGrange Road and discharged at IDOT's eastern right-of-way into a pre-existing ditch (the original ditch) on the northwest corner of Alpha Med's property. The area draining water to the property was a natural tributary and was not due to any IDOT improvements. The original ditch conveyed the water north on Alpha Med's property, parallel to LaGrange Road, into an adjacent property.

¶ 5     In January 2012, IDOT filed the operative complaint for condemnation naming Alpha Med as a defendant and owner. IDOT sought to condemn certain portions of Alpha Med's property for purposes of "widening and resurfacing" LaGrange Road. Specifically, IDOT sought to acquire in fee simple a strip of land on the western edge of Alpha Med's property which ran north and south adjacent to LaGrange Road between 173rd Street and 175th Street. This land included the area where the original ditch was located. IDOT additionally requested a five-year temporary easement "for construction purposes" over a strip of land adjacent to the land sought in fee simple. A portion of the temporary easement included "low quality wetlands."

¶ 6     The circuit court subsequently held a preliminary just compensation hearing. The record on appeal indicates the parties presented evidence, exhibits, and arguments. The record, however, does not contain a transcript, bystander's report, or agreed statement of facts, nor does it include any evidence or exhibits presented by the parties. Following the hearing, the circuit court entered an order (1) vesting IDOT with the authority to exercise the right of eminent domain consistent with the operative complaint and (2) setting preliminary just compensation in the sum of $303,000 for taking in fee simple, the temporary easement, and the diminution of

value to the remainder of the property caused by the taking and temporary easement.[2]

¶ 7      After IDOT deposited $303,000 with the Cook County Treasurer, the circuit court entered an order vesting title in IDOT and authorizing IDOT to take possession of the condemned parcels.  As part of the IDOT project to expand LaGrange Road, the original ditch was paved over and became part of the highway.  The culverts running under LaGrange Road were extended so naturally flowing water would be discharged outside of the newly constructed portion of the highway.  In July 2014, IDOT commenced constructing a new drainage ditch (the new ditch) in the temporary easement which, like the original ditch, collected the drainage water near the northwest corner of Alpha Med's property and conveyed the water north, parallel to LaGrange Road, into the adjacent property.  Although the exact date is not in the record, at some point this construction was completed.

¶ 8      In August 2015, Alpha Med commenced construction to extend its parking lot.  As part of the parking lot expansion, Alpha Med replaced either the new ditch or the partially constructed new ditch with an underground drainage system.  Alpha Med covered the underground drainage system with soil and paved over the area in order to construct the extended parking lot.  Alpha Med's construction occurred during IDOT's five-year temporary easement.

¶ 9      In July 2016, Alpha Med filed the operative counterclaim against IDOT for inverse condemnation.  Alpha Med alleged, in pertinent part, that the new ditch built by IDOT constituted a permanent and ongoing taking and that Alpha Med had not been compensated for that taking.  The counterclaim contained three counts: one count pursuant to the takings clause of the fifth amendment of the United States Constitution (U.S. Const., amend. V); one count

_____

[2] Although not addressed by the parties, the preliminary just compensation hearing appears to be consistent with the procedures set forth in the Eminent Domain Act (735 ILCS 30/1-1-1 *et seq.* (West 2012)) for a "quick take" condemnation proceeding pending the final determination of just compensation.  See *Department of Transportation ex. rel People v. 151 Interstate Road Corp.*, 209 Ill. 2d 471, 478-79 (2004).

pursuant the takings clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 15); and one count for inverse condemnation pursuant to section 10-5-65 of the Eminent Domain Act (735 ILCS 30/10-5-65 (Wet 2014)). Alpha Med sought an order compelling IDOT to commence an additional condemnation action and provide compensation.

¶ 10    IDOT answered the counterclaim and, pertinent to this appeal, raised as an affirmative defense that Alpha Med spoliated evidence by replacing the new ditch with an underground drainage system.

¶ 11    Alpha Med subsequently moved for partial summary judgment on its counterclaim. Alpha Med argued, in pertinent part, that the new ditch was beyond the scope of the temporary easement, and therefore constituted a permanent physical taking by IDOT for which Alpha Med was not compensated.

¶ 12    In response, IDOT filed a cross-motion for summary judgment on Alpha Med's counterclaim arguing the purpose of the temporary easement was, in part, to construct the new ditch in order to reestablish the natural flow of water draining from the forest preserve. According to IDOT, Alpha Med was compensated for the construction of the new ditch pursuant to the preliminary just compensation order. In addition, IDOT contended it was required to maintain the natural flow of water under the Illinois Drainage Code (Drainage Code) (70 ILCS 605/1-1 *et seq.* (West 2016)). IDOT maintained that its reestablishment of the original ditch by constructing the new ditch within the temporary easement therefore was not a separate taking requiring additional compensation. IDOT attached to its cross-motion the deposition transcript of Alpha Med's appraiser, who testified that at the time he was writing his appraisal report, his "understanding of the purpose of the temporary easement" was that it was, in part, "for construction and moving the ditch, *** the re-establishment of that ditch as it existed as of the

date of valuation."[3] IDOT additionally maintained that Alpha Med spoliated evidence by constructing the underground drainage system in the new ditch.

¶ 13    After the matter was fully briefed and argued, the circuit court entered a written order denying Alpha Med's motion for partial summary judgment and granting IDOT's cross-motion for summary judgment. The circuit court rejected IDOT's argument based on Alpha Med's spoliation of evidence but found that construction of the new ditch was clearly envisioned in the development plans advanced by IDOT and did not exceed the original fee taking for which Alpha Med was compensated. The written order further stated it was "final and appealable." Alpha Med subsequently appealed.

¶ 14    On appeal, IDOT filed a motion to dismiss the matter arguing the circuit court's written order failed to confer appellate jurisdiction pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). That motion was taken with this case. Alpha Med subsequently filed a motion for a Rule 304(a) finding in the circuit court, which was granted. The circuit court specifically found there was no just reason for delaying either enforcement or appeal of the court's previous order on the parties' cross-motions for summary judgment. This appeal followed.

¶ 15                                ANALYSIS

¶ 16    Prior to addressing the merits of Alpha Med's appeal, we observe that IDOT's motion to dismiss the appeal for lack of appellate jurisdiction was taken with this case and is still outstanding. The parties, however, now do not dispute that we have jurisdiction. After reviewing the issue, we find that jurisdiction was conferred upon this court as a result of Alpha

---

[3] While the appraisal report was created in June 2013, its stated purpose was "to estimate the retrospective market values of the subject property as of May 19, 2011" (the date IDOT filed its initial complaint for condemnation). We also note that although the parties attached additional depositions, appraisal reports, certain land surveys, and reports authored by engineers, that evidence generally concerned the value of IDOT's taking and temporary easement, and theories that Alpha Med does not advance on appeal, namely that IDOT caused an increased amount of water to drain into Alpha Med's property.

Med's timely second notice of appeal following the circuit court's Rule 304(a) finding. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Accordingly, the motion to dismiss the appeal is denied. We now turn to address Alpha Med's claims.

¶ 17    On appeal, Alpha Med argues that summary judgment should have been awarded in its favor because, as a matter of law, the new ditch constructed by IDOT was not within the scope of IDOT's temporary easement. According to Alpha Med, IDOT's construction of the new ditch therefore constituted a permanent taking for which Alpha Med was not compensated pursuant to the circuit court's preliminary just compensation order.

¶ 18    In response, IDOT contends its temporary utilization of Alpha Med's property to construct the new ditch was consistent with the temporary easement, and therefore its cross-motion for summary judgment was properly granted. Specifically, IDOT argues the plain language of the temporary easement, in conjunction with its complaint which sought to condemn Alpha Med's land for the "widening and resurfacing" of LaGrange Road, allowed it to carry out construction related to the widening of LaGrange Road, including reconstructing a necessary drainage ditch for Alpha Med's benefit.

¶ 19    Summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *River's Edge Homeowners' Ass'n v. City of Naperville*, 353 Ill. App. 3d 874, 877 (2004); 735 ILCS 5/2-1005(c) (West 2018). When, as here, parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. The mere filing of cross-motions for summary judgment, however, does not establish that there is no issue of

material fact, nor does it require a court to render summary judgment. *Id.* The circuit court's ruling on a motion for summary judgment is reviewed *de novo*. *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 399-400 (2010). Under a *de novo* review, we perform the same analysis that the circuit court would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 20    We initially address the circuit court's denial of IDOT's cross-motion for summary judgment based on IDOT's spoliation of evidence claim. A party claiming spoliation of evidence must demonstrate, among other things, that the loss or destruction of the evidence was the proximate cause of the plaintiff's inability to prove the underlying lawsuit and that, as a result, the plaintiff suffered actual damages. *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 26. Here, IDOT is not the plaintiff and, accordingly, its claim that Alpha Med spoliated evidence and caused IDOT's inability to prove an underlying lawsuit is prospective. See *id.* The circuit court therefore properly denied IDOT's cross-motion for summary judgment based on spoliation of evidence. See *Schultz*, 237 Ill. 2d at 399-400. We now address Alpha Med's claim that the circuit court erroneously granted summary judgment in IDOT's favor.

¶ 21    Alpha Med's argument revolves around the interpretation of IDOT's temporary easement. Easements are interpreted in the same manner any agreement between parties is interpreted. *River's Edge Homeowners' Ass'n*, 353 Ill. App. 3d at 878. "Generally, an instrument creating an easement is construed in accordance with the intention of the parties, which is ascertained from the words of the instrument and the circumstances contemporaneous to the transaction, including the state of the thing conveyed and the objective to be obtained." *Id.* If the language of an agreement is facially unambiguous, then the trial court interprets the easement as a matter of law without the use of extrinsic evidence. *Air Safety, Inc.*

v. *Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999); *Duresa v. Commonwealth Edison Co.*, 348 Ill. App. 3d 90, 101 (2004). Where the language of an easement is susceptible to more than one interpretation, then an ambiguity is present, and extrinsic evidence may be admitted in order to assist the trier of fact in resolving the ambiguity. *Air Safety, Inc.*, 185 Ill. 2d at 462-63; *Cross v. O'Heir*, 2013 IL App (3d) 120760, ¶ 26. The practical construction given to the instrument granting the easement by the parties' conduct is to be considered only if there is an ambiguity. *McMahon v. Hines*, 298 Ill. App. 3d 231, 236 (1998). In addition, courts will construe an agreement reasonably to avoid an absurd result. *Doyle v. Village of Tinley Park*, 2018 IL App (1st) 170357, ¶ 30. The interpretation of an easement is a question of law that we review *de novo*. *Cross*, 2013 IL App (3d) 120760, ¶ 25.

¶ 22    In this case, the scope of the temporary easement was set forth in IDOT's complaint, which stated that it sought, "A temporary easement for construction purposes for a period not to exceed five (5) years from the date of vesting of title or until completion of construction operations, whichever occurs first." The temporary easement, as established by the circuit court's order vesting title with IDOT consistent with its complaint, does not set forth the scope or type of construction to be performed. The plain language of the temporary easement is therefore susceptible to multiple interpretations, *i.e.*, it is ambiguous. See *Air Safety, Inc.*, 185 Ill. 2d at 462. Accordingly, we must consider extrinsic evidence and "the circumstances contemporaneous to the transaction" in order to determine the intent of the parties. See *Cross*, 2013 IL App (3d) 120760, ¶ 26; *River's Edge Homeowners' Ass'n*, 353 Ill. App. 3d at 878.

¶ 23    Here, the extrinsic evidence relevant to the intent of the parties includes the deposition transcript of Alpha Med's appraiser wherein he testified the purpose of the temporary easement was for reconstruction of the original ditch. In addition, there were numerous circumstances

contemporaneous to the transaction that demonstrate the parties contemplated reconstructing the new ditch in the temporary easement. See *River's Edge Homeowners' Ass'n*, 353 Ill. App. 3d at 878 ("an instrument creating an easement is construed in accordance with the intention of the parties, which is ascertained from the words of the instrument and the circumstances contemporaneous to the transaction, including the state of the thing conveyed and the objective to be obtained"). First, before the preliminary just compensation hearing, water drained naturally under LaGrange Road and into the original ditch on Alpha Med's property. Second, the LaGrange Road project involved constructing the new portions of LaGrange Road on top of the original ditch and extending the culverts to the edge of the highway. In fact, section 12-4 of the Drainage Code imposed an affirmative duty on IDOT to extend the culverts under the new portions of LaGrange Road. 70 ILCS 605/12-4 (West 2012) (the highway authority "shall construct and thereafter keep in repair and maintain a bridge or culvert of sufficient length, depth, height above the bed of the drain or ditch, and capacity to subserve the needs of the public with respect to the drainage of the lands within the natural watershed of such drain or ditch, *not only as such needs exist at the time of construction, but for all future time.*") (Emphasis added.) Moreover, the Drainage Code assumes the existence of a drainage ditch. See *id.* Third, the temporary easement, where the new ditch was constructed, partially consisted of low-quality wetlands, suggesting it could be used for drainage and would not be utilized for any other improvements to the property. Finally, in Illinois, landowners are required to accept the natural discharge of water onto their property. See *Swigert v. Gillespie*, 2012 IL App (4th) 120043, ¶ 32; 70 ILCS 605/2-1 (West 2012).

¶ 24    The evidence and contemporaneous circumstances discussed above demonstrate that consideration of the drainage flow was part of the road widening plans that prompted the initial

condemnation action against Alpha Med. In developing its plans to widen LaGrange Road, IDOT was required to consider, pursuant to the Drainage Code, how the water flowed through its culverts and into a drainage ditch. See 70 ILCS 605/12-4 (West 2012). Because the widened road was constructed on top of the original ditch, it was necessary to reestablish a new ditch so the extended culverts could drain properly. In light of the extrinsic evidence and the circumstances of the transaction described above, we find construction of the new ditch in the temporary easement was contemplated by the parties as part of IDOT's development plan to expand LaGrange Road in the area adjacent to Alpha Med's property. See *River's Edge Homeowners' Ass'n*, 353 Ill. App. 3d at 878.

¶ 25 Although Alpha Med does not explicitly state its interpretation of the scope of the construction to be performed in the temporary easement, its arguments implicitly suggest it views the easement as allowing for water to flow unchanneled onto its property. This interpretation strains credulity. See *Doyle*, 2018 IL App (1st) 170357, ¶ 30 (courts will construe an agreement reasonably to avoid an absurd result). Accordingly, viewing the evidence in the light most favorable to Alpha Med, we conclude IDOT's construction of the new ditch was within the scope of the temporary easement for which Alpha Med was previously compensated. See *River's Edge Homeowners' Ass'n*, 353 Ill. App. 3d at 877-78. IDOT was therefore entitled to summary judgment as a matter of law. See *id.* Thus, the circuit court did not err in denying Alpha Med's motion for summary judgment and granting IDOT's cross-motion for summary judgment. See *id.*

¶ 26 Alpha Med additionally contends the new ditch constituted a separate taking because it was a "permanent physical occupation of property" and relies on *Arkansas Game and Fish Comm'n v. United States*, 568 U.S. 23, 31 (2012), and *Loretto v. Teleprompter Manhattan CATV*

*Corp.*, 458 U.S. 419, 427 (1982), as authorities for this assertion. Alpha Med's argument is belied by the record. Our review of the record reveals that Alpha Med replaced the new ditch with its own drainage system, then paved over the drainage system in order to expand its parking lot. Moreover, there is no indication in the record that IDOT sought control over the temporary easement once the easement expired. Accordingly, Alpha Med, not IDOT, permanently and physically occupied the property located in the temporary easement after the easement expired. See *id*; *Hampton v. Metropolitan Water Reclamation District of Greater Chicago*, 2016 IL 119861, ¶ 23 (whether a taking has occurred is a question of law which we review *de novo*).

¶ 27       Alpha Med further relies on *Rosenthal v. City of Crystal Lake*, 171 Ill. App. 3d 428, 437 (1988), for the proposition that "it cannot seriously be argued that 'placement of a sewer system on private property is not a taking.' " Unlike in *Rosenthal*, however, in this case (1) a drainage ditch was previously located on Alpha Med's property and (2) Alpha Med was required to accept the natural flow of water onto its land. See *Swigert*, 2012 IL App (4th) 120043, ¶ 32; *Rosenthal*, 171 Ill. App. 3d at 437; 70 ILCS 605/2-1 (West 2012). *Rosenthal* is therefore inapposite. See *Rosenthal*, 171 Ill. App. 3d at 437. Accordingly, Alpha Med cannot demonstrate a taking occurred and the circuit court therefore properly granted summary judgment in IDOT's favor. See *Arkansas Game and Fish Comm'n*, 568 U.S. at 31; *Loretto*, 458 U.S. at 427; *River's Edge Homeowners' Ass'n*, 353 Ill. App. 3d at 877.

¶ 28                                     CONCLUSION

¶ 29       For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

¶ 30       Affirmed.

¶ 31       JUSTICE LAMPKIN, specially concurring:

¶ 32       I respectfully concur only in the judgment reached.